UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LISA AMOSON,
ROBB HUCK,
TROBY LANE PARRISH,
ALECIA RAMSEY,
LARRY HAROLD SAVAGE,
JILLYN SCHMIDT,
SANDRA SALAZAR SILVA,
BRITT HAROLD SINGLETON,
SUSAN WELCH,
    Plaintiffs,

v.                                                              cv_____

TAKEDA PHARMACEUTICALS U.S.A., INC.,
    Defendants.                                            NOVEMBER 17, 2022

## COMPLAINT

1. This is an action against an international pharmaceutical company, Takeda Pharmaceuticals U.S.A., Inc., hereinafter "Takeda," doing business in the United States. The company discharged each of the named plaintiffs in this case on account of the plaintiffs' religious beliefs, and because the plaintiffs refused, for religious reasons, to submit to vaccination against COVID-19.

### Venue

2. This is an action arising under Title VII of the Civil Rights Act of 1964. Venue is appropriate under 28 U.S.C. Section 1391, and Title VII of the Civil Rights Act of 1964.

### Parties

3. Lisa Joy Amoson was terminated by Takeda on November 1, 2021 because she failed to get vaccinated against COVID-19. She has exhausted administrative remedies and received a right to sue letter from the EEOC on September

1

12, 2022. At all times relevant to this action, she was a resident of the State of Oregon, residing in Central Point.

4. Robb Huck was terminated by Takeda on November 5, 2021 because he failed to get vaccinated against COVID-19. He has exhausted administrative remedies and received a right to sue letter from the EEOC on September 21, 2022. At all times relevant to this action, he was a resident of the state of Nebraska.

5. Troby Lane Parrish was terminated by Takeda on November 1, 2021 because she failed to get vaccinated against COVID-19. She has exhausted administrative remedies and received a right to sue letter from the EEOC on August 24, 2022. At all times relevant to this action, she was a resident of Dallas, Texas.

6. Alecia Ramsey was terminated by Takeda on November 2, 2021 because she failed to get vaccinated against COVID-19. She has exhausted administrative remedies and, as of the time of this filing, has requested a right to sue letter and been told that she should receive in on or before November 11, 2022. At all times relevant to this action, she was a resident of North Carolina.

7. Larry Harold Savage was terminated by Takeda on November 2, 2021 because he refused to get vaccinated against COVID-19. He has exhausted administrative remedies and received a right to sue letter from the EEOC on September 29, 2022. At all times relevant to this action, he was a resident of Acworth, Georgia.

8. Jillyn Schmidt was terminated by Takeda on November 2, 2021, after being denied a religious exemption from the company policy requiring COVID-19 vaccinations. She has exhausted administrative remedies and received a right to sue

letter from the EEOC on October 19, 2022. At all times relevant to this action, she was a resident of Manhattan, Kansas.

9. Sandra Salazar Silva was terminated by Takeda on December 17, 2021 after being denied a religious exemption to the company's vaccine mandate regarding COVID-19. She has exhausted administrative remedies and received a right to sue letter from the EEOC on September 6, 2022. At all times relevant to this action, she was a resident of Corpus Christi, Texas.

10. Britt Harold Singleton was terminated by Takeda on November 1, 2021. He has exhausted administrative remedies and received a right to sue letter from the EEOC on October 28, 2022. At all times relevant to this action, he was a resident of Canton, Georgia.

11. Susan Welch was terminated by Takeda on November 5, 2021. She has exhausted administrative remedies and has requested a right to sue letter from the EEOC; the letter has not arrived as of the date of this filing. At all times relevant to this action, she was a resident of Mandan, North Dakota.

12. Takeda Pharmaceuticals U.S.A., Inc., hereinafter "Takeda," is a Delaware corporation operating under the law of the United States, with a principal place of business located at 95 Hayden Avenue, Lexington, MA, 02421. Its agent for service is C T Corporation System, 155 Federal Street, Suite 700, Boston, MA, 02110. It operates throughout the United States through field agents and employees under its direct control.

**Takeda Adopts A Vaccine Mandate Regarding COVID-19**

13.     Takeda holds itself out to the world as "a global pharmaceutical leader committed to 'Bringing Health and a Brighter future' to patients by translating science into highly-innovative medicines." It operates in approximately 80 countries and regions throughout the world.

14.     In response to the global pandemic caused by the spread of various strains of COVID-19, the defendant, a pharmaceutical company, elected to create a company-wide policy requiring vaccination against potential infection by COVID-19 of current and prospective employees.

15.     The defendant recognized the need to make exemptions available to employees claiming religious objections to the requirement of vaccination, so long as the employee's, or prospective employee's, religious beliefs or practices were "sincerely held" and accommodating those beliefs would not impose an "undue hardship" on its business.

16.     The defendants created a companywide vaccination policy with a multi-tiered process to claim a religious exemption. All field employees were required to get vaccinated and submit proof of vaccination to Takeda by November 1, 2021. Takeda defines field employees as employees working in or visiting "clinics, hospitals, medical practices or healthcare facilities" and "required to interact in-person with customers in their designated workplaces."

17.     The policy required an applicant for a religious exemption to submit a request for an exemption specifying the nature of the religious exemption.  Upon receipt of this written request for an exemption, Takeda then assigns the request to an

investigator who contacts the requesting party to obtain further information. The investigator and company have discretion to reject a claim if they do not believe it is sincerely held or that it imposes an "undue hardship" on Takeda.

18. Upon information and belief, the United States is the only nation in which Takeda does business in which religious exemptions to vaccination requirements are mandated as a matter of law. This requirement arises from Title VII of the Civil Rights Act of 1964, and from the nation's unique commitment to religious liberty as expressed in its founding documents, in particular the First Amendment to the United States Constitution.

19. As a "global pharmaceutical leader" committed to the use of science to create "highly-innovative medicines," Takeda fosters a business culture and set of employment practices hostile to religious beliefs it believes might impede its scientific mission.

20. Upon information and belief, Takeda rarely, if ever, finds the religious beliefs of an employee "sincere" enough to warrant an exemption. When it cannot defeat the claims of a believer by claiming insincerity, Takeda then claims that accommodating the religious beliefs of an employee or prospective employee would pose an undue hardship on its business. The result is that Takeda almost never grants religious exemptions, in violation of Title VII.

21. The plaintiffs expressed concerns about their being required to inject a substance into their body that was developed in part by use of aborted fetal stem cells; they also asserted various claims such as their bodies being a temples of the Holy

Spirit, and asserted other religious grounds sounding in faiths and practices long recognized in the United States and throughout the world.

22. Although Takeda denied the religious exemptions requested by the plaintiffs herein on grounds that granting the exemptions would be an undue hardship for the company, similarly situated people who requested medical exemptions were granted such exemptions.

23. Takeda fosters an atmosphere of hostility to employees openly professing Christian beliefs, regarding those beliefs as, at best, anachronistic, and inconsistent with the company's vision of scientific progress.

24. The policy was administered in whole or in part at the headquarters of Takeda, located at 500 Shire Way, Lexington, Massachusetts 02421.

## Religious Exemptions Denied

### *Lisa Amoson*

25. Lisa Amoson began working at Takeda on February 3, 2020. She was terminated from her position as a Neuroscience Sales Representative on November 1, 2021, after refusing to obtain a COVID-19 vaccination. She sought a religious exemption to the vaccine requirement, listing her religion as "Christian-non-denominational."

26. After submitting her initial request for an exemption, Ms. Amoson was contacted by a member of Takeda's People Advisory Group who interviewed her about her religious beliefs and job requirements.

27. Ms. Amoson indicated a willingness to work remotely to obviate any concern that her non-vaccinated status might impose a risk of infection to either colleagues or clients.

28. Takeda rejected the claim for an accommodation on the grounds that it created an "elevated health and safety risk" to others. It also informed Ms. Amoson that permitting her to work remotely might result in a competitive disadvantage to Takeda as other sales representatives from competing firms might be ready, willing and able to meet prospective clients face to face. As such, it claims that accommodating Ms. Amoson would pose an undue hardship.

### *Robb Huck*

29. Robb Huck began working at Takeda in January 2013. He was terminated from his position as a Senior Sales Representative on November 5, 2021, after refusing to obtain a COVID-19 vaccination. He sought a religious exemption to the vaccine requirement, listing his religion as Catholic.

30. After submitting his initial request for an exemption, he was interviewed by a Takeda representative who questioned him about the sincerity of his religious beliefs and the nature of his job requirements.

31. Mr. Huck relayed a willingness to work remotely to obviate any concern about infecting others.

32. Takeda rejected the claim, stating that it could not "accommodate any conflict between your asserted religious beliefs and the COVID-19 vaccination requirement."

### *Troby Lane Parrish*

33. Troby Lane Parrish began working at Takeda in May 2006. She was terminated from her position as a Territory Manager on November 1, 2021, after refusing to get vaccinated against COVID-19. She sought a religious exemption from the vaccination requirement, listing her religion as non-denominational Protestant.

34. After requesting a religious exemption by means of an electronic request submitted via a company sponsored portal known as the VaxDMS site, she was interviewed by a Takeda employee who questioned her about the sincerity of her religious beliefs and about the nature and scope of her employment duties.

35. Ms. Parrish expressed a desire to remain at Takeda, but did not want her continued employment to undermine her religious beliefs, and she expressed a willingness to work remotely.

36. Takeda rejected Ms. Parrish's claim for a religious exemption stating on grounds that an exemption would pose an elevated risk to others; it also asserted that accommodating her request to work remotely in a market in which competitors were working face-to-face would result in an undue hardship to Takeda.

### *Alecia Ramsey*

37. Alecia Ramsey began working at Shire, a company later acquired by Takeda, in October 2004; she began formal employment at Takeda in 2019. She was terminated from her position as an Interim Business Manager/Regional Sales Trainer on November 2, 2021, after refusing to get vaccinated against COVID-19. She sought a religious exemption from the vaccination requirement; she is a non-denominational Christian.

38. After requesting a religious exemption through the company-mandated process at U.S.ReligiousAccom@takeda.com, she was interviewed by a Takeda official, who questioned her about the sincerity of her religious convictions and the nature and scope of her job duties.

39. Ms. Ramsey told the interviewer that she wished to remain at Takeda, but did not want her continued employment to undermine her religious beliefs. She also expressed a willingness to work remotely.

40. Takeda rejected Ms. Ramsey's request for a religious accommodation, asserting that granting her one would be an undue hardship on the company.

### *Larry Harold Savage*

41. Larry Savage began working at Shire, a company later acquired by Takeda, in February 2016; he began formal employment by Takeda in 2019. He was terminated from his position as an Immunology Territory Business Manager – Alpha 1 Sales on November 1, 2021, after refusing to get vaccinated against COVID-19. He sought a religious exemption from the vaccination requirement; he is a non-denominational Christian.

42. After requesting a religious exemption through the company-mandated process at U.S.ReligiousAccom@takeda.com, he was told he must submit to an interview with a company representative to discuss sincerity of his religious convictions and the nature and scope of his job duties.

43. Mr. Savage refused to submit to a verbal interrogation about his faith. Instead, he offered to answer any question in writing, insisting that there be a written

record of the company's questions and his answers. Takeda refused to agree to proceed by way of written communication, and Mr. Savage was summarily fired.

44.     Takeda rejected Mr. Savage's request for a religious accommodation, asserting that granting one would be an undue hardship.

### *Jillyn Schmidt*

45.     Jillyn Schmidt began working for Takeda in April 2012. She was terminated from her position as a Senior Sales Representative on November 2, 2022, after refusing to get vaccinated for COVID-19, as was required by Takeda policy. She sought a religious exemption from the vaccine mandate. She is a non-denominational Christian.

46.     After requesting a religious exemption through the company-mandated process, she was interviewed by a company official, who questioned her about the sincerity of her religious beliefs and the nature and scope of her job duties.

47.     Ms. Schmidt told the interviewer she wished to remain employed by Takeda, valued her job, but did not want her continued employment to compromise her religious beliefs. She also expressed a willingness to work remotely.

48.     Takeda rejected Ms. Schmidt's request for a religious accommodation, asserting that granting one would impose an undue hardship.

### *Sandra Salazar Silva*

49.     Sandra Silva began working for Takeda in July 2002. She was terminated from her position as a Senior Sales Representative on December 17, 2021, after she was denied a religious exemption to the company's vaccine mandate requirement and she refused to violate her religious convictions by getting vaccinated. She is a Catholic.

She was granted a brief medical exemption from the requirement before her request for a religious exemption was denied.

50. After requesting a religious exemption, Ms. Silva was interviewed by a human resources manager, who interrogated her about the sincerity of her religious beliefs and the nature and scope of her job duties.

51. Ms. Silva told the interviewer that she valued her long-term relationship with Takeda and that she did not want to sever ties with the company. She also expressed a willingness to work remotely. She explained that she did not want her employment duties to conflict with her religious beliefs.

52. Takeda rejected Ms. Silva's request for a religious accommodation, asserting that granting one would result in an undue hardship for the company.

### *Britt Harold Singleton*

53. Britt Singleton began his employment with a division of Baxter, which was later acquired by Takeda, in February 2010. He was terminated from his position as a Senior Manager, Patient Access, on November 1, 2021, after he was denied a religious exemption from the company's vaccine mandate and refused to get vaccinated against COVID-19. He is non-denominational Protestant Christian.

54. After requesting a religious exemption, Mr. Singleton was interviewed by a company investigator and questioned about the sincerity of his religious beliefs and the nature and scope of his employment duties.

55. Mr. Singleton told the interviewer that he enjoyed his employment at Takeda, hoped to remain there, but did not want to be placed in a position in which he

11

had to choose between his religious convictions and his employment. He told the interviewer that he was willing to work remotely.

56. Takeda rejected Mr. Singleton's request for a religious accommodation, stating that his inability to meet "face to face with healthcare providers provides an undue hardship" for the company.

### *Susan Welch*

57. Susan Welch began her employment with Takeda in 2016. She was terminated from her position as a Sales Representative in November 2021 after she was denied a religious exemption to Takeda's vaccine mandate policy and she refused to get vaccinated against COVID-19. She is a Catholic.

58. After requesting a religious exemption, and making it clear to the company that she also had grounds to claim a medical exemption, she was interviewed by a Takeda representative who questioned her about the sincerity of her religious beliefs and the nature and scope of her job duties.

59. At that interview, she made clear her desire to remain at Takeda, and that she was willing to work remotely if need be. She also stated that she did not want to be placed in a position in which she might be compelled to choose between her religious convictions and continued employment.

60. Takeda rejected Ms. Welch's request for a religious accommodation, stating that her request imposed an undue hardship on the company. It failed, refused or neglected to consider seriously her request for a medical exemption.

***The Pretextual Nature Of Takeda's Denial Of Religious Exemptions***

61. In each of the aforesaid cases, Takeda denied accommodations for religious exemptions citing business hardship, to wit, the loss of competitive advantage to other pharmaceutical firms who were ready, willing and able to have their employees meet face-to-face with clients and potential clients.

62. In fact, Takeda knew, or should have known, that most of its competitors had a policy favoring the granting of religious exemptions and accommodations, including the ability to work remotely. Takeda's decision to deny the exemptions was based in whole or in part on the desire to seek a competitive advantage over those companies following the law and respecting the conscientious religious beliefs of their employees.

63. In fact, Takeda granted medical exemptions for many employees who were accommodated and permitted to work remotely, despite whatever competitive disadvantage this many have entailed. The company engaged in a policy of denying virtually all religious exemptions while granting many medical exemptions. This lack of neutrality burdened the plaintiffs in the practice of their religious beliefs in violation of the law.

64. In fact, Takeda's interrogation of the plaintiffs to determine the sincerity of their religious beliefs, and the company's sharing of the contents of these interviews with other employees, held the plaintiffs out to scorn and suspicion as they were compelled to make doctrinal religious statements as a condition of maintaining their employment, with their employers having the sole discretion to determine whether the beliefs were sincere.

65. As a direct and proximate result of the manner in which Takeda treated the plaintiffs, they suffered emotional distress and humiliation, the loss of employment, wages and the attendant benefits associated with employment at Takeda.

WHEREFORE, The aforesaid plaintiffs, each of them, seeks damages as follows:

a. Lost wages, past and future;

b. Compensatory damages for emotional distress;

c. Attorneys' fees and costs;

d. Punitive damages;

e. Such other relief as the Court deems fair and equitable

### DEMAND FOR TRIAL BY JURY

The plaintiffs request trial by jury.

Respectfully submitted,

/s/ Brian Unger
Brian Unger, BBO No. 706583
THE LAW OFFICES OF
WARNER MENDENHALL, INC.
20 Park Plaza, 400-4
Boston, MA 02116
617.297.2227; f 330.762.9743
brian@warnermendenhall.com

/s/ Kevin Smith
Kevin Smith, Esq.
Juris ct27657
Pattis & Smith, LLC
383 Orange Street, First Floor
New Haven, CT 06511
T: 203-393-3017
F: 203-393-9745
E: Ksmith@Pattisandsmith.com
*Pro Hac Vice Forthcoming