**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| LISA AMOSON, ROBB HUCK, ALECIA RAMSEY, LARRY HAROLD SAVAGE, JILLYN SCHMIDT, SANDRA SALAZAR SILVA, BRITT HAROLD SINGLETON, SUSAN WELCH,<br><br>             Plaintiffs,<br><br>    v.<br><br>TAKEDA PHARMACEUTICALS U.S.A., INC.,<br><br>             Defendant. | Case No.: 1:22-cv-11963-LTS |

**TAKEDA PHARMACEUTICALS U.S.A., INC.'S**
**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION FOR SUMMARY JUDGMENT AS TO ALL PLAINTIFFS**

## I.    PRELIMINARY STATEMENT

Takeda Pharmaceuticals U.S.A., Inc. ("Takeda" or the "Company") submits this supplemental memorandum of law in support of its motion for summary judgment as to all Plaintiffs, limited to Takeda's undue hardship defense. The relevant facts are undisputed.

Takeda established in its prior briefing through unrebutted evidence that the health and safety risks associated with allowing Plaintiffs—who all worked as field-based pharmaceutical employees for Takeda—to interact with healthcare providers ("HCPs"), their staff, patients, and other Takeda employees while remaining unvaccinated against the COVID-19 virus presented an undue hardship that eliminated any requirement to exempt Plaintiffs from the Company's vaccine requirement. The case law cited in Takeda's prior briefing—including cases granting summary judgment on undue hardship grounds decided by this Court—and subsequent case law from the last 18 months confirms that Takeda is entitled to summary judgment on that basis.

Takeda further established that it was not required to accommodate any Plaintiff by allowing them to work remotely (not in the field) because—as Plaintiffs concede by admitting every single material fact on this point—such an accommodation would remove an essential job function (i.e., direct, in-person interactions with HCPs, staff, and other Takeda employees), which is unreasonable as a matter of law and alone sufficient to grant summary judgment. As a separate basis for dismissal, Takeda offered unrebutted evidence that removing the in-person job responsibilities would have come at a substantial cost as demonstrated by the fact that sales of its primary neuroscience product declined approximately 19% at the start of the COVID-19 pandemic when its field-based employees were unable to directly engage customers, and a subsequent analysis showed that eliminating its in-person field sales team would have led to a 15%

decline in sales revenue. Those costs separately support Takeda's undue hardship defense under *Groff v. DeJoy*, 600 U.S. 447 (2023).

## II.    ARGUMENT[1]

### A.    Allowing Plaintiffs to Conduct In-Person Interactions Without Receiving The COVID-19 Vaccine Would Create An Undue Hardship For Takeda.

In its prior briefing, Takeda established that allowing Plaintiffs to conduct their field-based job duties in person without being vaccinated presented an undue hardship based on the significant health and safety risks to Takeda, its employees, and HCPs, including their staff and patients—many of whom were immunocompromised. Takeda relied on undisputed evidence that being infected with the COVID-19 virus could cause serious personal injury and even death, and that Takeda implemented the Vaccine Policy to mitigate against those risks. Doc. No. 53 ¶¶ 17, 105. That evidence included unrebutted expert testimony from Dr. Daniel Salmon that (1) unvaccinated individuals, including Plaintiffs, were at a greater risk of contracting and spreading the virus through their regular interactions with patients and other vaccinated Takeda employees; (2) available COVID-19 vaccines were between 66.9% and 94.5% effective in preventing contraction of the COVID-19 virus; (3) other protective measures, such as masking, were less effective due to various factors, including difficulties implementing those protections; and (4) requiring field-based employees to be vaccinated was the best way for Takeda to protect its employees, HCPs, and patients against the health and safety risks posed by the COVID-19 virus. *Id.* ¶¶ 106-16.

Takeda cited ample legal authority granting summary judgment in favor of employers who established the undue hardship defense under similar circumstances. Doc. No. 52 at 33-34 & n.7. Further, in *Macauda v. Dep't of Children & Families*, this Court granted summary judgment in

---

[1] Takeda incorporates by reference herein the legal standards contained in its moving brief. Doc. No. 52 at Sections III.A & III.B.2.

favor of defendant, finding that the "proposed accommodations [masking, testing] are not as effective as vaccination at preventing infection, limiting the severity of infection, or limiting transmission of the disease" and the defendant "bore a responsibility to protect the health and welfare" of the individuals it served. *See* Exhibit A, No. 1:22-cv-30124, at 10 (D. Mass. July 30, 2024) (Sorokin, *J.*); *see also Delaney v. Mass. Dep't of Revenue*, 2024 U.S. Dist. LEXIS 169776, *4-5 (D. Mass. July 31, 2024) (Sorokin, *J.*) (same). So too here, and the same result should follow.

And since Takeda filed its reply on September 24, 2024, courts from around the country— including the First Circuit—have reaffirmed that ***health and safety*** risks posed by unvaccinated employees are sufficient to establish undue hardship under the *Groff* standard. *See, e.g.*, *Rodrique v. Hearst Commc'ns, Inc.*, 126 F.4th 85, 94 (1st Cir. 2025) ("Because Rodrique has not challenged Hearst's evidence that accommodating his exemption request would be a substantial burden if the vaccine does reduce the likelihood of transmitting the virus, Hearst is entitled to summary judgment on Rodrique's religious discrimination claims."); *Melino v. Bos. Med. Ctr.*, 127 F.4th 391, 397 (1st Cir. 2025) (affirming summary judgment for employer because undisputed evidence established that employer "implemented its vaccine requirement based on the CDC's recommendations, which describe vaccines as mitigating the effects and spread of COVID-19").[2]

---

[2] *See also* Doc. Nos. 73, 75 (citing cases); *Harmon v. Bos. Med. Ctr.*, 2024 WL 4815292, at *5 (D. Mass. Nov. 18, 2024) (granting summary judgment in favor of employer based on undue hardship where employer established that plaintiff's job "placed her in a particularly risky position to spread infection, as she was in-person and in close contact with vulnerable patients, their families, and other [hospital] staff," and that "[a]llowing her to remain unvaccinated would have increased the risk of spreading COVID-19 throughout the hospital and beyond*"); Lavine v. Mass Gen. Brigham Inc.*, 2025 WL 1372316, at *6 (D. Mass. May 12, 2025) (same); *Buchanan v. Massachusetts Dep't of Correction*, 2024 WL 5202787, at *4 (D. Mass. Dec. 23, 2024) ("Exempting plaintiff from the vaccine mandate would have limited her ability to perform her job and posed heightened health risks to those around her, thereby disrupting defendant's overall staffing and programming operations."); *Andrade v. Massachusetts Dep't of Correction*, 2025 WL 319563, at *4 (D. Mass. Jan. 13, 2025) (same); *Cyr v. Bos. Med. Ctr.*, 2025 WL 269239, at *7 (D. Mass. Jan. 22, 2025) (same where "undisputed facts show[ed] that allowing [plaintiff] to continue working as a NICU nurse while unvaccinated would have jeopardized the health of [employer's] staff"); *Bushra v. Main Line Health, Inc.*, 2025 WL 1078135, at *2 (3d Cir. Apr. 10, 2025) (affirming summary judgment in favor of employer based on "unrebutted expert testimony that unvaccinated healthcare workers . . . presented an increased risk of transmitting COVID-19 to others, particularly when they interacted with vulnerable groups"); *Wise v. Children's Hosp. Med. Ctr. of Akron*, 2025 WL 1392209, at *4 (6th Cir. May 14, 2025) ("Hospitals facing the pressures of the pandemic faced immense pressure

3

Here, too, because the health and safety risks in allowing Plaintiffs to engage in in-person interactions created an undue hardship to Takeda, it was not required to accommodate Plaintiffs.

### B. Exempting Plaintiffs Essential In-Person Interactions Would Create An Undue Hardship For Takeda.

While some (but not all) Plaintiffs requested to work remotely as an accommodation, Takeda also established that remote work would have posed an undue hardship to Takeda because—as each Plaintiff readily admitted—conducting in-person interactions was essential to their field-based jobs in terms of building relationships, providing necessary customer service, and driving Takeda's business.[3] An accommodation that would eliminate an essential function of the job is unreasonable as a matter of law, as this Court recognized in granting summary judgment in *Macauda* and *Delaney*. *See e.g.*, Ex. A, *Macauda*, at 9 ("the undisputed facts establish that remote work would have 'fundamentally change[d] the nature of [Macauda's] job or require[d] [defendant to remove an essential function"; "[b]y definition, this is not a reasonable accommodation") (collecting cases); *see also Munroe v. Bos. Med. Ctr.*, 790 F. Supp. 3d 52, 60 (D. Mass. 2025) (same); *Antredu v. Mass. Dep't of Youth Servs.*, 2024 WL 1539725, at *5 (D. Mass. Apr. 9, 2024) (same).

"'Essential functions' are 'fundamental job duties of the employment position.' 'Factors to be considered' in evaluating whether a function is essential 'include the employer's judgment, written job descriptions, the work experience of past incumbents of the job, and the current work

---

[3] to keep their patients safe. And where a hospital presents evidence that accommodating an employee's exemption would threaten the hospital's most vulnerable patients—as is the case here—such exemptions constitute undue hardship.").

[3] Plaintiffs Huck, Ramsey, and Silva did not ask to work remotely. Doc. No. 52 ¶¶ 118, 135, 159, 183, 205, 243, 257. Thus, they cannot avail themselves of such an accommodation. *See Together Emps. v. Mass Gen. Brigham Inc.*, 573 F. Supp. 3d 412, 434 (D. Mass. 2021) (rejecting argument that certain plaintiffs should have been permitted to work remotely or submit to other COVID-19 protective measures because they "did not mention such accommodations," and it was their "burden to demonstrate what specific accommodations they needed and how those accommodations were connected to their ability to work"), *aff'd*, 32 F.4th 82 (1st Cir. 2022).

experience of incumbents in similar jobs.' In conducting this analysis, courts grant a 'significant degree' of deference to the first factor, the employer's judgment." *Sutherland v. Peterson's Oil Serv., Inc.*, 126 F.4th 728, 740 (1st Cir. 2025) (citations omitted).

Applying similar factors, the district court in *Appel v. Inspire Pharms., Inc.*, 712 F. Supp. 2d 538, 545-46 (N.D. Tex. 2010), *aff'd*, 428 F. App'x 279 (5th Cir. 2011), held that in-person interactions with healthcare providers were an essential function of the plaintiff's pharmaceutical sales manager position. There, the court relied on the employer's judgment and the job description, which listed certain requirements, including: selling "products to physicians, managed care organizations, and other healthcare providers"; utilizing "customer-focused selling techniques . . . to maintain high customer intimacy and customer knowledge"; and "[s]ome travel." In rejecting the plaintiff's argument that "she could have directly communicated with physicians through e-mail and phone calls and that she could have sent them sample request cards," the court held that she did "not explain how she could perform [the] parts of the job that [the employer] deem[ed] essential, including making face-to-face contact in provider's offices."[4] *Id.* at 546.

Similarly, here, Takeda deems in-person interactions an essential function of its field-based employees, who are the "face of Takeda." Doc. No. 53 ¶ 30. The Sales Representative job description requires in-person attendance at "client sites," enabling representatives to "[d]eliver

---

[4] Other courts have likewise recognized the essential nature of in-person interactions for employees in sales-related roles, whose success depends on building relationships that only direct, personal contact can foster. *See Durning v. Duffens Optical, Inc.*, 1996 WL 67640, at *5 (E.D. La. Feb. 14, 1996) (holding that in-person sales call were an essential function of eyeglass salesman because plaintiff "admit[ed] . . . that he knew that [employer] expected its sales representatives to make in-person sales calls on its customers, and that "calling on assigned accounts, explaining products and services to customers, training doctors, communicating effectively both verbally and orally, and analyzing and addressing customer needs" were expected); *Henry v. TDS Metrocom*, WL 1651044, at *10 (N.D. Ill. July 8, 2005) (ruling that in-person customer visits were an essential function of a telecommunications account manager's job because the "job description identified essential functions as contacting prospective customers through a combination of telephone and in person contacts, making sales calls to determine customer needs, and presenting solutions to customers"; plaintiff admitted that "a 'main objective with an account representative was to be out in the field"; and "it was much more difficult to close a sale over the telephone than in person").

accurate and timely follow-up discussions with HCPs and office staff," "[f]oster ongoing trust with HCPs," "influence the HCP decision making process," and "[d]istribute product samples . . . and marketing literature to physicians and other [HCPs]."[5] Doc. No. 52-2, Ex. A. Takeda also requires sales representatives to "attend sales meetings at off-site locations." *Id.*

Plaintiffs have admitted that Takeda expected them to interact with HCPs in person, and that the majority of their work consisted of those interactions. *See* Doc. No. 53 ¶¶ 31, 40, 43 (Amoson admitting Takeda expected her to spend practically all of her time in the field, calling on HCPs, and that 90% of her HCP interactions were in person); *id.* ¶¶ 81-86, 88 (same for Savage); *id.* ¶¶ 56-59 (same for Silva); *id.* ¶¶ 90-93 (same for Singleton); *id.* ¶¶ 45-48 (same for Huck with 80% HCP interactions in person); *id.* ¶¶ 49-52, 54 (same for Schmidt with 75%-90% HCP interactions in person); *id.* ¶¶ 62-64, 70-71 (same for Welch with at least 80% HCP interactions in person); *id.* ¶¶ 76-78, 80 (same for Ramsey with at least 60% HCP interactions in person). ***Indeed, Plaintiffs admitted every single fact in Takeda's statement of undisputed material facts regarding each of their field-based positions***. *See* Doc. No. 60 ¶¶ 27-97. They further conceded in their opposition the Takeda's motion for summary judgment—as they must—that engaging in in-person interactions was an essential function of their jobs. Doc. No. 59 at 5-6 ("Takeda would look at the ability to perform the essential functions of the employee's job which, for a field-based employee, was in-person interactions, ability to the out in the field, engaging with our healthcare

---

[5] The same job description applied to Plaintiffs Amoson, Huck, Schmidt, Silva, and Welch. *See* Doc. No. 53-2, Exs. B, E, F, I. Plaintiffs in other field-based roles had similar requirements. *See* Doc. No. 53-2, Ex. C (requiring 80% "[t]ravel to various meetings or client sites, including overnight trips" for Plaintiff Ramsey's Regional Sales Trainer position); *id.*, Ex. D (requiring overnight and "local travel" to "[c]all[] on prospective customers, master[] effective sales presentation, provide[] technical and administrative product information and/or demonstrations" and "[c]onduct[] community education events for healthcare professionals, patients" for Plaintiff Savage's Territory Business Manager position); *id.*, Ex. G (requiring Patient Access Managers, like Plaintiff Singleton, to be "field-based" and to "provide logistical reimbursement assistance, education, and support for rare immunologic diseases," including responsibility for "educating physicians, care givers, staff genetic counselors, nurses, pharmacists, and ancillary staff, as well as patients, families and patient organizations," as well as "50-70% travel").

providers and stakeholders and vendors."). Plaintiffs' admissions end the inquiry, as eliminating an essential function is *per se* unreasonable. *See* Ex. A, *Macauda*, at 9.

Even if the Court deems in-person work non-essential notwithstanding Plaintiffs' admissions, Takeda has established as a separate basis for its undue hardship defense that removing in-person interactions from Plaintiffs' job duties would have created significant cost under *Groff*. Specifically, sales of Takeda's primary neuroscience product declined approximately 19% during the initial stages of the COVID-19 pandemic when the country was on lockdown and Takeda was forced to pull its sales team from the field and engage in limited remote sales calls. *Id.* ¶¶ 99, 101. Similarly, Takeda evaluated whether, as a business profitability measure, to eliminate its field-based sales force and replace it with solely digital promotions and concluded that the proposed change would have resulted in a 15% decline in sales revenue. *See id.* ¶¶ 102-104. Plaintiffs have offered no evidence to rebut this testimony, and courts have held that such costs satisfy *Groff*'s undue hardship test. *See Petersen v. Snohomish Reg'l Fire & Rescue,* 150 F.4th 1211, 1221 (9th Cir. 2025) (holding that loss of "a lucrative contract" was sufficient to establish undue hardship); *cf. Caltrider v. Teva Sales & Mktg., Inc.*, 2025 WL 3476481, at *8 (W.D. Mich. Jan. 22, 2025) (rejecting undue hardship defense because defendant did "not establish whether, and how much, sales revenue would have been impacted by accommodating [plaintiff]").

## III.    CONCLUSION

For the foregoing reasons, Takeda respectfully requests that the Court grant summary judgment in its favor as to all Plaintiffs and dismiss the Complaint in its entirety with prejudice.

Dated: April 1, 2026

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

By: /s/ *Keri L. Engelman*
Keri L. Engelman (BBO# 704360)

Celina Antonellis (BBO# 708904)
One Federal Street
Boston, MA 02110
Tel. (617) 341-7700
Fax. (617) 341-7701
keri.engelman@morganlewis.com
celina.antonellis@morganlewis.com

Thomas A. Linthorst*
Jason J. Ranjo*
502 Carnegie Center
Princeton, NJ 08540
Tel. (609) 919-6600
Fax. (609) 919-6701
thomas.linthorst@morganlewis.com
jason.ranjo@morganlewis.com

Donald E. English Jr.*
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Tel. (202) 739-3000
Fax. (202) 739-3001
donald.english@morganlewis.com

*Attorneys for Defendant*

*Admitted Pro Hac Vice

8

## CERTIFICATE OF SERVICE

I, Keri L. Engelman, hereby certify that the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on April 1, 2026.

_/s/ Keri L. Engelman_
Keri L. Engelman
