# Exhibit A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ANDREA MACAUDA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 22-30124-LTS |
| | ) | |
| DEPARTMENT OF CHILDREN | ) | |
| AND FAMILIES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

ORDER ON MOTION FOR SUMMARY JUDGMENT (DOC. NO. 30) AND
MOTION TO STRIKE (DOC. NO. 33)

July 30, 2024

SOROKIN, J.

Andrea Macauda brings a religious discrimination claim against her former employer, the Massachusetts Department of Children and Families ("DCF"). She argues that DCF violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), when it terminated her for failing to comply with COVID-19 vaccination requirements.[1] Doc. No. 1 ¶¶ 34–44. She seeks damages, attorney's fees, and reinstatement. Id. ¶ 55. DCF now moves for summary judgment. Doc. No. 30. Macauda opposes and moves to strike the testimony of DCF's expert. Doc. No. 33. For the following reasons, the Court DENIES the Motion to Strike and ALLOWS the Motion for Summary Judgment.

---

[1] Prior to the filing of DCF's motion for summary judgment, Macauda voluntarily dismissed a claim for violation of Mass. Gen. Law ch. 151B. Doc. No. 17.

I.    MOTION TO STRIKE

Macauda moves to strike DCF's expert, Dr. Madoff. Doc. No. 33. Dr. Madoff is a duly credentialed medical expert. Doc. No. 30-1 ¶ 1. Macauda effectively concedes as much by failing to object to his qualifications.[2] Instead, Macauda advances a series of critiques unsupported by evidence or expertise. For example, she complains that Dr. Madoff did not conduct "any primary research into the efficacy of the COVID-19 vaccines." Doc. No. 33 at 2. This point is irrelevant even assuming it is factually correct, which DCF does not concede. Doc. No. 40 at 2–3. An expert is not required to rely only on his own primary research in forming an opinion. See, e.g., Crowe v. Marchand, 506 F.3d 13, 17 (1st Cir. 2007). Medical doctors routinely rely on research conducted by their peers, and the Rules of Evidence are not offended by this practice. Id.

Next, Macauda makes much of a medical study that Dr. Madoff failed to cite in his declaration, and another study that Macauda believes Dr. Madoff interpreted incorrectly. Doc. No. 33 at 5–6. Macauda believes these studies are dispositive. Id. At best, these arguments are properly attributed to the weight of Dr. Madoff's testimony rather than its admissibility. See Costa v. FCA US LLC, No. 20-11810, 2022 WL 18910359, at *3 (D. Mass. Sept. 30, 2022); see also Haley v. Exec. Off. of Health & Hum. Servs., No. 23-11691, 2024 WL 1836480, at *1 (D. Mass. Apr. 26, 2024) (rejecting identical challenge to Dr. Madoff's testimony in markedly similar case where plaintiff was represented by the same lawyer now representing Macauda). Third, Macauda complains that Dr. Madoff did not know "that SARS-CoV-2 had been circulating prior to the outbreak in Wuhan in December 2019." Doc. No. 33 at 7. She offers no evidence to support this factual assertion about the virus's origin, and she bears the burden of

---

[2] Macauda does highlight Dr. Madoff's inability to answer specific questions, which she characterizes as a challenge to his expert qualifications. Doc. No. 33 at 1. The Court addresses this challenge shortly.

establishing this fact if she wishes to use it to challenge an expert's testimony. Thus, the Court

disregards this challenge. In any event, nothing about that fact undermines the admissibility of

Dr. Madoff's testimony. An expert need not know when a virus outbreak began in order to opine

on the course of the disease or the efficacy of a vaccine.

Finally, Macauda complains that Dr. Madoff did not answer, as Macauda wished, certain

hypothetical questions posed during his deposition. For example, Macauda asked Dr. Madoff to

quantify an individual's likelihood of contracting COVID-19 or to precisely quantify the

absolute level of risk reduction for a vaccinated individual. Doc. No. 33-1 at 22. Dr. Madoff

responded by explaining that the answers were complicated, he had not done the necessary

research to answer the questions posed, and that risk reduction levels apply to populations at

large rather than specific individuals. Id. This is hardly the basis for excluding a medical or

scientific expert; if anything, it merely demonstrates a thoughtful, careful approach by Dr.

Madoff. The Motion to Strike is DENIED.

II.    FACTUAL RECORD

Along with its motion, DCF filed a Statement of Material Facts. Doc. No. 32. The Local

Rules of this Court provide that material facts of record "will be deemed . . . admitted unless

controverted by the . . . opposing party." L.R., D. Mass. 56.1. An opposing party must provide

"documentation" (i.e., evidence) supporting any factual contention she identifies. Id. Here,

Macauda answered by filing her own Statement of Disputed Material Facts. Doc. No. 35. As to

many of DCF's asserted facts, Macauda made no response whatsoever. Thus, each of these facts

is deemed admitted.[3]

---

[3] Those facts are listed in the DCF Statement of Material Facts, Doc. No. 32, as numbered
assertions 1–7; 10–12; 17–18; 20; 22–36; 40–45; 47–52; and 54–76.

Macauda asserts that there is a factual dispute over the following three issues: "1) The absolute risk reduction of the COVID-19 vaccines; 2) For how long, if at all, COVID-19 vaccines protect the recipient against infection with COVID-19; [and] 3) For how long, if at all, COVID-19 vaccines prevent the recipient from transmitting COVID-19." Doc. No. 35 at 1. She cites sections of Dr. Madoff's deposition transcript that allegedly contradict DCF's position on these issues. Based on these three "disputed" issues, Macauda objects to thirteen factual assertions from DCF's Statement of Material Facts, all of which relate to the efficacy and safety of the COVID-19 vaccines.[4] Those facts are listed in the DCF Statement as numbered assertions: 8, 9, 13, 14, 15, 16, 19, 21, 37, 38, 39, 46 and 53. Doc. No. 35 at 1–3.

Macauda's challenges fail to create a genuine dispute as to any of the facts contained in DCF's Statement of Material Facts, Doc. No. 32. At his deposition, Dr. Madoff conceded that he did not know the "absolute" risk reduction from each COVID-19 vaccine, the precise duration of protection afforded by the vaccines, the exact time and rate of waning effectiveness, or the specific amount of protection from transmission afforded by the vaccines. Doc. No. 33-1 at 15, 17, 28. Dr. Madoff's inability to answer these questions, either generally or as to one specific individual, does not create genuine disputes of material fact as to DCF's principal assertions made on a general or population level: 1) COVID-19 vaccines are effective in reducing the risk of infection; and 2) vaccinated individuals, when infected, are less likely to suffer severe illness and are less likely to transmit the disease, as compared to unvaccinated individuals.

---

[4] Macauda actually says she "denies that there are genuine issues remain[ing] regarding" DCF Facts 8, 9, 13, 14, 15, 16, 19, 21, 37, 38, 39, 46 and 53. Doc. No. 35 at 1–3. Interpreting this sentence as written would mean that Macauda did not dispute any of these facts. The context, however, suggests Macauda meant to dispute each of the facts. Accordingly, the Court gives Macauda the benefit of the doubt and will construe her statement as identifying factual challenges.

A simple example illustrates the point. An auto engineer opines that racecars can drive faster than minivans. The fact that the engineer cannot calculate the exact difference in top speeds between these two types of vehicles generally, or as to two hypothetical vehicles, does not create a dispute of fact regarding her assertion. To dispute the engineer's assertion, the opposing party must provide actual evidence showing that minivans can drive as fast or faster than racecars, or alternatively, evidence showing that the difference in speed is not material to the issues in the case. This Macauda has not done. She cites no evidence to support the "disputes" she identifies.[5] Accordingly, the Court determines that there is no genuine dispute of fact as to DCF Facts 8, 9, 13, 14, 15, 16, 19, 21, 37, 38, 39, 46 and 53. Thus, all material facts listed by DCF, Doc. No. 32, are undisputed for present purposes.

### III. UNDISPUTED FACTS

In 2021, Macauda worked as an ongoing social worker for DCF. Doc. No. 32 ¶ 57. She was responsible for visiting children and families in their homes, supervising visits between children and their parents, and transporting children to agency-related appointments. Id. These responsibilities entailed regular in-person contact with children, members of the public, and other DCF employees. Id. ¶ 58.

On August 19, 2021, the Governor of Massachusetts issued an executive order requiring all executive department employees to provide proof of COVID-19 vaccination by October 17, 2021, as a condition of their continued employment. Id. ¶¶ 22–24. The executive order directed state agencies to implement an exemption procedure, whereby a reasonable accommodation

---

[5] At the motion hearing, Macauda's counsel appeared to suggest that her Statement of Disputed Facts, Doc. No. 35, did include citations to support material factual disputes regarding DCF Facts 8, 9, 13, 14, 15, 16, 19, 21, 37, 38, 39, 46 and 53. Closer inspection reveals that the only citations included by Macauda are the ones DCF provided in its Statement of Material Facts, Doc. No. 32. The Court has examined the citations and finds that they do not reveal or suggest a material factual dispute, contrary to Macauda's argument.

could be made for any employee not able to receive COVID-19 vaccination due to medical disability or a sincerely held religious belief. Id. ¶ 25.

Macauda requested an exemption from the vaccination requirement, citing her Christian beliefs. Id. ¶ 63; Doc. No. 30-7 at 2–4. As a proposed accommodation, she asked to perform her work 100% remotely. Doc. No. 32 ¶ 63. Alternatively, she proposed using masking, social distancing, and periodic testing as means of mitigating virus spread. Id. DCF considered Macauda's request. Id. ¶ 69. In a letter dated October 14, 2021, DCF informed Macauda of its findings ("the October letter"). Doc. No. 1-5 at 2. As the October letter explained, DCF concluded that Macauda had demonstrated a "sincerely held religious belief," but that her request would pose an undue hardship for the agency because it would exacerbate staffing problems and therefore impact the quality of care DCF could provide to families receiving services. Id.; Doc. No. 32 ¶ 69. Macauda was given a choice: get vaccinated, or face discipline "up to and including termination." Doc. No. 1-5 at 2. She chose the latter. Consequentially, DCF terminated her employment on November 19, 2021. Doc. No. 30-5 at 3.

IV.   LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To defeat a summary judgment motion, the nonmoving party must demonstrate, "through submissions of evidentiary quality, that a trialworthy issue persists." Iverson v. City of Bos., 452 F.3d 94, 98 (1st Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–24 (1986)). A nonmoving party may not rely on speculation to avoid summary judgment, and the Court need not credit the nonmoving party's version of events if it is "blatantly contradicted" by the evidence. Medina-Rivera v. MVM, Inc., 713 F.3d 132, 136 (1st Cir. 2013). The nonmoving party "must be able to point to specific,

competent evidence to support his claim." August v. Offices Unlimited, Inc., 981 F.2d 576, 580 (1st Cir. 1992).

The First Circuit applies a two-part test in evaluating Title VII religious discrimination claims. First, the plaintiff must make a prima facie case that a "'bona fide religious practice conflicts with an employment requirement and was the reason for the adverse employment action.'" Lowe v. Mills, 68 F.4th 706, 719 (1st Cir. 2023) (quoting Sánchez-Rodríguez v. AT & T Mobility P.R., Inc., 673 F.3d 1, 12 (1st Cir. 2012)). If the plaintiff establishes a prima facie case, the burden then shifts to the employer "to show that it made a reasonable accommodation of the religious practice or show that any accommodation would result in undue hardship." EEOC v. Unión Independiente de la Autoridad de Acueductos y Alcantarillados de P.R., 279 F.3d 49, 55 (1st Cir. 2002).

V.   DISCUSSION

A.    Bona Fide Religious Practice

Macauda claims that DCF should be precluded from challenging her religious practice, Doc. No. 34 at 2, because the agency's October 14 response letter stated that she had demonstrated a "sincerely held religious belief." [6] Doc. No. 1-5 at 2. DCF's letter, conceding the sincerity of Macauda's religious belief, is certainly an admissible statement of a party opponent. But the Court is dubious that the statement alone suffices to relieve Macauda from her burden of establishing a bona fide religious practice. Macauda has not established that (a) DCF's determination was grounded in applicable law; (b) this Court must defer to DCF's determination; or (c) the statement constitutes a waiver or estoppel preventing DCF from contesting the issue. Moreover, the Court notes that "[a] stated claim of religious belief, without more, cannot grant

---

[6] The Court assumes, for the sake of argument, that "religious belief" and "religious practice" are terms that can be used synonymously.

an individual a blanket privilege to make his own standards on matters of conduct in which society as a whole has important interests." Griffin v. Mass. Dep't of Rev., No. 22-11991, 2023 WL 4685942, at *6 (D. Mass. Jul. 20, 2023) (Saylor, C.J.) (internal quotations omitted).

Nonetheless, the Court need not resolve this issue. The First Circuit has described Title VII's definition of religion as "capacious." Unión Independiente, 279 F.3d at 56 (noting that findings on this issue "generally will depend on the factfinder's assessment of the employee's credibility"). As such, courts confronting the question on summary judgment "often assume that plaintiffs have established a prima facie case and resolve matters on other grounds." Together Emps. v. Mass Gen. Brigham Inc., 573 F. Supp. 3d 412, 441 (D. Mass. 2021), aff'd, 32 F.4th 82 (1st Cir. 2022) (collecting cases); see also Haley, 2024 WL 1836480, at *1; Isaac v. Exec. Off. of Health & Hum. Servs., No. 22-11745, 2023 WL 8544987, at *2 (D. Mass. Dec. 11, 2023); Robinson v. Children's Hosp. Bos., No. 14-10263, 2016 WL 1337255, at *6 (D. Mass. Apr. 5, 2016). This Court follows suit and assumes, for purposes of resolving the instant motion only, that Macauda can establish a prima facie case that a bona fide Christian practice prevents her from receiving the COVID-19 vaccines.

B.    Undue Hardship

The burden now shifts to DCF to show that it offered Macauda a reasonable accommodation, or if not, to show that doing so would have resulted in undue hardship for the agency. Unión Independiente, 279 F.3d at 56. Here, it is undisputed that DCF did not offer Macauda any accommodation, Doc. No. 32 ¶ 74, so the analysis will focus on the undue hardship question. This inquiry "must take into account the context of the particular employer's business and the nature of operations." Together Emps., 573 F. Supp. 3d at 435. "Considerations include not only direct economic costs, but indirect ones related to health and safety." Id.; see also Groff v. DeJoy, 600 U.S. 447, 469 (2023) (discussing undue hardship).

8

Macauda first requested DCF permit her to work entirely remotely. Doc. No. 32 ¶ 48. In doing so, Macauda asked to be relieved from essential elements of her job: in-person visits to family homes, in-person transportation of children, in-person supervision of parental visits and, occasionally, in-person emergency responses. Id. ¶ 57. Notably, the undisputed facts establish that remote work would have "fundamentally change[d] the nature of [Macauda's] job or require DCF to remove an essential function." Doc. No. 32 ¶ 74.  By definition, this is not a reasonable accommodation. Lang v. Wal-Mart Stores E., L.P., 813 F.3d 447, 456 (1st Cir. 2016); see also Mulloy v. Acushnet Co., 460 F.3d 141, 153 (1st Cir. 2006) (explaining that a proposed accommodation that "redefin[ed]" an employee's job description is "per se unreasonable"). Indeed, at least one other session of this Court reached the same conclusion with respect to an employee of the Department of Youth Services for virtually identical reasons. Antredu v. Mass. Dep't of Youth Servs., No. 22-12016, 2024 WL 1539725, at *5 (D. Mass. Apr. 9, 2024) (Young, S.J.). Other reasons also support rejecting Macauda's proposed accommodation. At the time in question, DCF faced a substantial shortage of staff due to the COVID-19 pandemic. Doc. No. 32 ¶ 35. Allowing Macauda to work remotely would have exacerbated this shortage, as the undisputed facts establish. Id. ¶ 48.  DCF has met its burden in showing that permitting Macauda to work remotely would have imposed an undue hardship on the agency.

Macauda next proposed a different accommodation, which would have required her to socially distance, wear a mask, and test weekly for COVID-19 in lieu of getting vaccinated. Id. ¶ 63. This proposal would have also eliminated some of Macauda's essential job functions, as she would not have been able to maintain social distance while visiting families in their homes or transporting children to appointments. See id. ¶ 71. Moreover, this proposed accommodation would have impaired her ability to closely examine children and their living spaces, both of

9

which were essential functions of her job. These reasons alone suffice to find that the proposed accommodation would have created an undue hardship for DCF. In addition, the undisputed evidence establishes that these proposed accommodations are not as effective as vaccination at preventing infection, limiting the severity of infection, or limiting transmission of the disease. Id. ¶ 73. At the relevant time, DCF suffered from staffing shortages, which were exacerbated by illness among staff. DCF also bore a responsibility to protect the health and welfare of the children and families it served. For all these reasons, DCF has established that this proposed accommodation, like the first, would have imposed an undue hardship on the agency.[7]

Finally, the Court notes one more point. The nature of Macauda's submissions to the Court suggest she is less focused on litigating her claim than on advancing her views about COVID-19 vaccines. She offered no evidence and limited, if any, argument on the undue hardship question, other than her generalized arguments about COVID-19 vaccine efficacy. For example, she did not engage with the specifics of her job responsibilities. Moreover, she misunderstands the relationship between the COVID-19 vaccines and her case. To prevail, DCF need not prove that the vaccines prevent all possibility of infection or transmission. Rather, DCF must show that, during the time relevant to this case, the vaccines were effective at preventing infection, reducing the severity of infection, and reducing virus transmission.[8] These factual assertions, as noted above, are not disputed. Macauda failed to provide any expert evidence on these points.[9] Nor did she submit any evidence whatsoever on the undue hardship issue. DCF, as

---

[7] Notably, Macauda failed to dispute any facts or cite any evidence related to her job or the reasonable accommodation issues. See Doc. No. 35.

[8] It might even be enough for DCF to show that it reasonably reached its conclusions about COVID-19 vaccine efficacy. However, the Court need not resolve this question, because the record establishes that DCF did more than that.

[9] The Court rejects the citation to two letters from the FDA, Doc. Nos. 34-1 and 34-2, for the same reason Judge Stearns rejected them. Haley, 2024 WL 1836480, at *2.

noted above, has met its burden in showing that Macauda's proposed accommodations would have imposed undue hardship on the agency. Nothing more is required. DCF is entitled to judgment as a matter of law.

VI.    CONCLUSION

The motion for summary judgment, Doc. No. 30, is ALLOWED. Macauda's motion to strike the declaration of Dr. Lawrence Madoff, Doc. No. 33, is DENIED. The Clerk shall enter judgment in favor of Defendant and against Plaintiff with each side bearing its own litigation costs.

SO ORDERED.

/s/ Leo T. Sorokin
United States District Judge

11

# Delaney v. Mass. Dep't Revenue

United States District Court for the District of Massachusetts

July 31, 2024, Decided; July 31, 2024, Filed

Civil No. 23-10136-LTS

**Reporter**
2024 U.S. Dist. LEXIS 169776 *

ALFONZINA DELANEY, Plaintiff, v. MASSACHUSETTS DEPARTMENT REVENUE, Defendant.

**Counsel:** [*1] For Alfonzina Delaney, Plaintiff: Peter Vickery, Bobrowski & Vickery, LLC, Amherst, MA USA.

For Department of Revenue (State of Mass.), Defendant: Jeffrey T. Collins, Morgan, Brown & Joy, Boston, MA USA; Jeffrey T. Collins, Morgan, Brown & Joy.

**Judges:** Leo T. Sorokin, United States District Judge.

**Opinion by:** Leo T. Sorokin

# Opinion

ORDER ON MOTION FOR SUMMARY JUDGMENT (DOC. NO. 16) AND MOTION TO STRIKE (DOC. NO. 19)

SOROKIN, J.

This case concerns whether the Commonwealth of Massachusetts Department of Revenue ("DOR") violated the rights of its former employee, Alfonzina Delaney, as established by 42 U.S.C. § 2000e-2(a). DOR terminated Delaney for failing to comply with COVID-19 vaccination requirements.[1] After the conclusion of all discovery, DOR moved for summary judgment. Doc. No. 16. In support of its motion, DOR filed a statement of undisputed facts. Doc. No. 18. Delaney, represented by counsel, responded to the statement of facts, Doc. No. 21, opposed the motion, Doc. No. 20, and filed a cross-motion to strike the testimony of DOR's medical expert, Dr. Lawrence Madoff, Doc. No. 19. DOR opposed the motion to strike, Doc. No. 22, and filed a reply in support of its motion for summary judgment, Doc. No. 23.

The motion to strike mirrors a [*2] motion that Delaney's counsel filed in another similar action involving a different plaintiff and a different state agency. See Mot. Strike, Macauda v. Mass. Dep't of Child. & Fams., No. 22-30124 (D. Mass. May 5, 2024), ECF No. 33. The motion is DENIED for the reasons stated in the Court's decision in that case. See Order at 2-3, Macauda, No. 22-30124 (D. Mass. July 30, 2024), ECF No. 43 [hereinafter Macauda Order]. That decision is incorporated herein.

---

[1] These requirements were established by Massachusetts Executive Order 595, which required all executive department employees to provide proof of COVID-19 vaccination by October 17, 2021, as a condition of their continued employment. Doc. No. 18 ¶ 51.

Turning to the motion for summary judgment, the Local Rules of this Court provide that material facts of record "will be deemed . . . admitted unless controverted by the . . . opposing party." L.R., D. Mass. 56.1. Here, Delaney failed to respond to most of the factual assertions made by DOR. Each of these facts is thus DEEMED ADMITTED.

Delaney did attempt to dispute the following facts set out in DOR's statement: "8, 9, 11, 13, 14, 15, 16, 18, 19, 21, 20, 21 [sic], 30, 37, 38, 39, 44, 50, 63, 70, 71."[2] Doc. No. 21. As to virtually all of these facts, Delaney provided the same basis for dispute: a string reference to various pages of Dr. Madoff's deposition.[3] The Court has reviewed all of the cited pages. In the identified portions of Dr. Madoff's deposition, he conceded he did not recall the absolute or relative risk reductions generated by the various COVID-19 vaccines or certain [*3] aspects of various studies he had reviewed. He also noted that quantifying risk reduction presents a complicated question involving many factors (incidentally not within the scope of the question posed by Delaney's counsel). None of these statements create a genuine dispute of material fact as to any of the facts Delaney purports to challenge. To accomplish that, Delaney must cite evidence that actually disputes the fact asserted. Here, her efforts fail. For this reason, all the facts Delaney attempts to dispute noted in the list above are DEEMED ADMITTED. Thus, the entire statement of facts submitted by DOR, Doc. No. 18, is DEEMED ADMITTED.

While Delaney's submission warrants no further discussion here, the Court notes and incorporates by reference its more fulsome analysis of a similar issue in the same recent case already cited, where the same attorney sought to dispute similar factual assertions based on the same testimony by Dr. Madoff. See Macauda Order at 3-5.

Finally, the Court cautions counsel for Delaney on one point. DOR Fact 11 asserts: "Neither the Pfizer nor Moderna vaccines for COVID-19 contain fetal cells, and fetal cells were not used in their development or production." [*4] Doc. No. 18 at 3. Delaney purports to dispute this fact. She does so by citing the same pages of Dr. Madoff's deposition noted above. Doc. No. 21 at 2. At no point in these pages does Dr. Madoff discuss anything about fetal cells. In addition, a word search of the deposition for the word "fetal" reveals no mention of this topic in any question or answer, nor does the word index prepared by the reporter contain a single entry for the word "fetal." See Doc. No. 19-1 at 36. In short, counsel sought to dispute this fact by citing unrelated testimony, without filing any evidence in support of the dispute or asking Dr. Madoff about it. This objection as stated is frivolous and borders on a violation of Rule 11 of the Federal Rules of Civil Procedure.

Turning to the merits, the Court resolves DOR's motion for summary judgment by applying the familiar standard governing such motions. Fed. R. Civ. P. 56; Iverson v. City of Bos., 452 F.3d 94, 98 (1st Cir. 2006). Here, all the facts advanced by DOR are undisputed. While DOR persuasively argues that Delaney has failed to establish a prima facie case of religious discrimination, the Court need not resolve that issue, because the undisputed facts establish that Delaney's proposed accommodation would have relieved her from essential elements of her job. Doc. No. 18 [*5] ¶ 45. By definition, this is not a reasonable accommodation. Lang v. Wal-Mart Stores E., L.P., 813 F.3d 447, 456 (1st Cir. 2016); see also Mulloy v. Acushnet Co., 460 F.3d 141, 153 (1st Cir. 2006) (explaining that a proposed accommodation that "redefin[ed]" an employee's job description is "per se unreasonable"). The undisputed facts also establish that Delaney's proposed accommodation would have imposed an undue

---

[2] The Court has listed the facts exactly as they appear in Delaney's opposition.

[3] To the extent that Delaney cites slightly different parts of Dr. Madoff's deposition, the variation is immaterial. Compare ¶ 8 (citing Madoff Deposition Tr. 104: 14-23; 104:24; 105; 106: 1-12), with ¶ 9 (citing Madoff Deposition Tr. 50: 22-24; 51:1-24; 52:1-9; 59: 23-24; 60: 1; 104: 24; 105; 106: 1-12).

hardship on DOR. Doc. No. 18 ¶ 70. Delaney has offered no evidence and limited, if any, argument on the questions of reasonable accommodation and undue hardship. For example, she did not engage with the specifics of her job responsibilities as an attorney for DOR. Instead, she submitted only generalized arguments about COVID-19 vaccine efficacy. Such arguments are insufficient to withstand summary judgment.

Accordingly, the Court ALLOWS DOR's motion for summary judgment, Doc. No. 16, and DENIES Delaney's motion to strike, Doc. No. 19. The Court further incorporates here the general discussion on the law set forth in the Macauda Order at 7-11. The Clerk shall enter judgment in favor of DOR and against Delaney with each side bearing its own fees and costs.

SO ORDERED.

/s/ Leo T. Sorokin

United States District Judge


**JUDGMENT**

Sorokin, D.J.

In accordance with the Order entered on July 31, 2024, judgment is [*6] in favor of Defendant and against Plaintiff with each side bearing its own litigation costs.

SO ORDERED.

/s/ Leo T. Sorokin

Leo T. Sorokin

United States District Judge

---

**End of Document**