## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

LISA AMOSON, ROBB HUCK, ALECIA
RAMSEY, LARRY HAROLD SAVAGE,
JILLYN SCHMIDT, SANDRA SALAZAR
SILVA, BRITT HAROLD SINGLETON,
SUSAN WELCH,

Plaintiffs,

v.

TAKEDA PHARMACEUTICALS U.S.A.,
INC.,

Defendant.

Case No.: 1:22-cv-11963-LTS

## PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Pursuant to the Court's March 25, 2026 order, the Plaintiffs submit this supplemental memorandum of law explaining why the Court should not revisit Judge O'Toole's denial of summary judgment in this case and, if it does, why it should not reverse his decision.

**I.**      **The Principles Underlying The "Law Of The Case" Doctrine Counsel Against Revisiting Judge O'Toole's Summary Judgment Decision.**

Judge O'Toole's decision denying the Defendant's summary judgment motion (ECF 77) is an interlocutory ruling that the Court may, but *should not*, revisit. "[L]itigants have a right to expect that a change in judges will not mean going back to square one." *United States v. Kayser-Roth Corp., Inc.*, 103 F.Supp.2d 74, 83-84 (D. R.I. 2000) (cleaned up). The "law of the case" doctrine serves this interest. It, however, does not stand as an "absolute bar to reconsidering issues previously decided." *Kayser-Roth Corp., Inc.*, 103 F.Supp.2d at 83. "Courts should be loath to do so in the absence of extraordinary circumstances" though. *Id*. at 83. This doctrine applies in "a variety of different circumstances," including situations where it ensures "the deference due from one judge to rulings made in the same case by another judge of the same court or a judge of a coordinate court." *Id*. at 83 (cleaned up). Thus, "[a] judge should revisit issues previously decided by another judge only for reasons that would warrant revisiting his or her own rulings and not merely because he has a different view of the law or the facts from the first judge.'" *Id*. at 83-84 (cleaned up).

"Extraordinary circumstances exist" when the decision is "clearly erroneous and would work a manifest injustice" or "a material change in controlling legal authority or the discovery of new evidence" is "likely to alter the result." *Id*. at 83 (cleaned up). None of those circumstances are present here. There is no change in controlling appellate authority or new evidence. It matters naught that this Court might have reached a different conclusion than Judge O'Toole did. Judge O'Toole did not commit a clear error of law by deferring a "fact-specific inquiry" upon which there are genuine disputes of material fact to a jury because that is exactly what the law requires him to do. *Groff v. DeJoy*, 600 U.S. 447, 468 (2023). Thus, the Court should not revisit Judge O'Toole's decision.

**II.    Summary Judgment Is Inappropriate For Plaintiffs Amoson, Savage, Singleton, Ramsey, Silva, Schmidt, And Welch's Claims.**

Undue hardship is a jury question in this case. The Defendant gave Plaintiff Sandra Silva a medical accommodation – ECF 60, p. 48, ¶ 223, and granted medical accommodations to other employees – ECF 60, ¶ 344. As the movant, the Defendant failed to carry its burden to show how the medical accommodations provided to Sandra Silva and other employees did not undercut its claim of undue hardship. Thus, summary judgment should be denied.

The Defendant has predicated its denial of religious accommodations to the Plaintiffs on their status as field-based, sales employees. ECF 60, pp. 6-7, ¶¶ 27-28. The Defendant emphasized the importance of the Plaintiffs meeting in-person with healthcare providers. ECF 60, ¶¶ 31-43, 49-97. The Defendant then argued that religiously accommodating the Plaintiffs would pose a health risk to its employees and its customers, thus creating an undue burden. *Id*. at ¶¶ 105-116.[1]

The Defendant's claim of an "undue burden," however, does nothing to show how providing Sandra Silva and other field-based, sales employees with medical accommodations posed a different burden in any way. Because the Defendant failed to even make an effort to make that showing, whether the Defendant has asserted a legitimate "undue burden" or only a "pretextual one" is a question of fact that a jury must decide after hearing testimony and evaluating witnesses' credibility. The Court should not usurp the jury's role on this record.

Moreover, the Defendant's treatment of Silva demonstrates that its claim of an "undue burden" for all Plaintiffs is specious at best. It explained that Silva continued to work in-person except for "a brief period of remote work during the COVID-19 pandemic." *Id*. at ¶ 57. It also explained that Silva would "typically spend 90% of her time in the field, calling on HCPs in person." *Id*. at ¶ 60. Despite these facts, the Defendant granted her a temporary medical accommodation with

---

[1] Plaintiffs do not waive their prior objections to these paragraphs.

no enumerated modifications to her work responsibilities. *Id*. at ¶ 223. In other words, on the current record, the Defendant did not incur an "undue burden" when granting a medical accommodation and took no steps to mitigate its safety concerns for those accommodations.

The very suggestion that safety concerns were present for religious accommodations but not for medical accommodations defies all common sense. Either an unvaccinated individual poses a safety threat, or they do not. Accommodating one reason for exemptions, but not another, without regard for their identical consequences, completely undercuts any claim of "undue burden." It also screams religious intolerance, hostility, and discrimination, which Title VII prohibits. At the very least, it creates a factual dispute to be resolved at trial.

Lastly, the Defendants' cited cases are all factually distinguishable. Neither *Macauda v. Dept. of Children and Families*, No. 22-30124 (D. Mass. 2024) nor *Delaney v. Mass. Dept. of Revenue*, No. 23-10136 (D. Mass. 2024) considered a record where there was evidence that the employer granted similarly situated employees medical accommodations, but not religious accommodations. As such, this Court could find the absence of a dispute over whether the burden imposed by a religious accommodation posed an undue hardship. The same is true of the other cases that the Defendant cite from this Court.[2]

The Defendant's First Circuit case also contains a similar lack of evidence undercutting an employer's claim of undue burden. *See Rodrique v. Hearst Commc'ns, Inc.*, 126 F.4th 85, 94 (1st Cir. 2025) (finding that the plaintiff did not challenge the evidence that an accommodation would present a substantial burden if the COVID vaccine reduced the likelihood of viral transmission).[3]

---

[2] *See Harmon v. Boston Medical Center*, 2024 WL 4815292 (D. Mass. 2024); *Lavine v. Mass General Brigham, Inc.*, 2025 WL 1372316 (D. Mass. 2025); *Buchanan v. Mass. Dept. of Correction*, 2024 WL 520787 (D. Mass 2024); *Andrade v. Mass. Dept. of Correction*, 2025 WL 319563 (D. Mass. 2025); *Cyr v. Boston Medical Center*, 2025 WL 269239 (D. Mass 2025); *Munroe v. Boston Medical Center*, 790 F.Supp.3d 52 (D. Mass. 2025); *Antredu v. Mass. Dept. of Youth Services*, 729 F.Supp.3d 76 (D. Mass 2024).

[3] The Defendant's non-binding authorities also do not raise challenges to employers' assertions of undue burden based on their grant of medical accommodations, but not religious accommodations, to similarly situated employees. *Wise v.*

In sum, the Defendant granted medical accommodations to similarly situated employees with no additional steps to address their concerns. They denied religious accommodations to identically situated employees on nothing more than pretextual claims of undue hardship. That is textbook discrimination that should go to a jury to resolve any lingering factual disputes.

**III.     The Court should not revisit summary judgment as to Plaintiff Robb Huck or the other plaintiffs because the issue of undue hardship presents an issue of fact for the jury.[4]**

**Facts as to Plaintiff Huck**: Plaintiff Huck worked as a Senior Sales Representative, primarily calling on family medical practices. SUMF ¶ 44. He did not work in Takeda's offices or facilities and did not have in person contact with Takeda employees except very rarely. Huck aff., ¶ 8, 12. No customer of Takeda's whom Mr. Huck visited had a vaccine mandate for visitors. Huck aff., ¶ 15. Mr. Huck did not engage in any sales pitches, discussions or meaningful face to face interactions with customers' patients. Huck aff., ¶ 10. He met with Physicians and their staff, at which time he masked. Huck aff., ¶ 8, 19. There is no evidence in the record that Mr. Huck's vaccination status posed a risk to Takeda employees. There is no evidence in the record of cost to Takeda resulting from Mr. Huck visiting Takeda customers while being unvaccinated.

**Takeda's expert**: Takeda relies on an expert opinion, but the Court should disregard it.  The Court should consider only the information that Takeda "knew at the time of [his termination]." *Cousin v. United States*, 230 F. Supp. 3d 475, 490 (E.D. Va. 2017) ("[A]s in other employment discrimination contexts, the Court's task is to assess the employment decision from the perspective of the employer at the time the decision was made.")  In this case, Takeda's expert opinion came *after* Takeda's decision denying Huck's religious accommodation request and only for the purpose of this litigation. Thus, it did not factor into Takeda's decision making process when Takeda denied Mr. Huck's

---

*Children's Hospital Medical Center of Akron,* 2025 WL 1392209 (6th Cir. 2025) (rejecting an employee's claim from religious exemption from COVID-19 testing); *Bushra v. Main Line Health, Inc.*, 2025 WL 1078135, at *2 (3rd Cir. 2025) (specifically discussing the lack of evidence for similarly situated employees).

[4] Plaintiff Huck incorporates by reference the legal standards cited to in the Plaintiffs' Rule 56 opposition briefs.

religious accommodation request and the court should disregard it. *See DeJarnette v. Corning Inc.,* 133 F.3d 293, 299 (4th Cir. 1998).

**Analysis**: The employer has the burden of proving that an accommodation will cause undue hardship on the employer's business, which is a "fact specific inquiry". *Groff,* 600 at 453-54, 468. "Undue hardship is something greater than hardship." *Id.* at 471. The Court in *Groff* held the undue hardship standard requires the employer to "show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Id.* at 470. In this case, the record is barren of any evidence that allowing Mr. Huck to enter Takeda's customer's offices, none of whom required vaccination of him, would have resulted in any cost to Takeda. Thus, the Court should not overturn Judge O'Toole's decision denying Takeda's motion for summary judgment. Takeda has not met its burden at this stage relative to the issue of undue hardship.

The case of *Bobnar v. AstraZeneca Pharms. LP,* 758 F. Supp. 3d 690, 724-727 (2024) featured facts very similar to Mr. Huck's case. The Court in that case *granted summary judgment to the plaintiff* on the issue because the employer had not met its burden to demonstrate undue hardship. Like the plaintiff in *Bobnar*, Mr. Huck worked in sales for a pharmaceutical company visiting medical practices. As in *Bobnar*, the Takeda customers who Mr. Huck visited had no vaccination requirements. *Id. at 726,* citing <u>*Isensee v. Amplity, Inc.*, 2024 U.S. Dist. LEXIS 85982, 2024 WL 2132419, at *8 (S.D. Ohio May 13, 2024)</u> (summary judgment denied for defendant because it "offer[ed] no proof that customers were requiring vaccinations in the areas covered by [plaintiff]"). As with Takeda in this case, the employer in *Bobnar* offered no evidence that it would suffer substantial costs, lost sales or decreased business due to the plaintiff's vaccination status.

In *Bobnar* the employer also argued, as Takeda does here, that the plaintiff's sales role "required regular face-to-face interactions with customers in healthcare and other settings" and his

continued unvaccinated employment as a biologic sales specialist posed "significant health risks" for AstraZeneca's customers and their patients. The Court in this case should reject such an argument, as the Court did in *Bobnar,* and should hold that Mr. Huck's "interactions with his customers are insufficient to demonstrate undue hardship." *Id.* at 717.

The Court in *Bobnar* pointed out that when health risks posed by a plaintiff's lack of vaccination *have* constituted undue hardship, the employer's concern tended to regard the risk posed to the *employer's own employees or their own patients*, not the employees or patients of third parties. *Id.* at 727-728. The record in Mr. Huck's case, like the record in *Bobnar,* demonstrates that Mr. Huck's site visits to customers' facilities would typically be done alone, and not with any other Takeda employees. Therefore, the Court should hold, as the court in *Bobnar* did, that Takeda accordingly cannot rely on unsupported third-party health and safety risks to demonstrate an undue hardship to itself. *Id.* at 728. Also, *Rodrique, 26 F.4th at 85,* on which Takeda also relies is also distinguishable from this case because it involved an employer who sought only to protect its *own employees,* not, one who, like Takeda in this case, purports to try and protect other businesses' employees and patients of other businesses. *Id.*; see also *Bobnar* and related discussion*, infra. See also Melino v. Bos. Med. Ctr.*, 127 F.4th 391 (1st Cir. 2025) (lacking any evidence regarding any medical accommodations to similarly situated employees).

Finally, as stated, *supra*, the cases to which Takeda cites which were decided by this Court (Sorokin, J.) to support its undue burden argument, *Macauda* and *Delaney,* are inapposite. In those cases*,* the plaintiffs' requested accommodations would have relieved them from some or all of the essential elements and functions of their jobs. By definition, such an accommodation would have posed an undue hardship on their employers. In *Macauda* and *Delaney,* the Court cited *Mulloy v. Acushnet Co.,* 460 F.3d 141, 153 (1st Cir. 2006) (a proposed accommodation that "redefin[ed]" an employee's job description is "per se unreasonable"*)* and rightly granted the employer summary

6

judgment. Plaintiff Huck's case is different. He never sought to change anything about the functions of his sales position. He was more than willing to continue in person visits to Takeda's customers, none of whom had vaccine mandates for visitors like Huck.

Takeda also, in a footnote, cites to a string of cases, all of which are distinguishable from this case. Most of the cases Takeda cites involved staff nurses at hospitals or corrections officers whose employers denied religious accommodations and demonstrated undue burden because, unlike Takeda in this case, they sought to protect *their own employees and patients.* [5] The Court should not disturb Judge O'Toole's decision denying summary judgment to Takeda because Takeda has not met its burden to demonstrate that there is no material issue of fact in dispute as to the question of whether Takeda would have sustained undue hardship by granting Mr. Huck's proposed accommodation given that the accommodation woudl not have resulted in cost to Taked or posed a safety risk to Takeda's own employees.

WHEREFORE, for the reasons stated above, the Court should not revisit Judge O'Toole's decision denying Takeda's motion for summary judgment because Takeda has not met its burden to demonstrate undue hardship and therefore it is a question for the jury to decide at trial.

---

[5] *Contra: Harmon v. Bos. Med. Ctr.*, 2024 WL 4815292 (D. Mass. Nov. 18, 2024) *and Lavine v. Mass Gen. Brigham Inc.,* 2025 WL 1372316 (D. Mass. May 12, 2025) (both involving a health care workers' requests for accommodation in which the employer hospitals, unlike Takeda in this case, sought to protect *its own* employees and patients; *Buchanan v. Massachusetts Dep't of Correction*, 2024 WL 5202787 (D. Mass. Dec. 23, 2024) *and Andrade v. Massachusetts Dep't of Correction*, 2025 WL 319563 (D. Mass. Jan. 13, 2025) (involving corrections officers and their employers' goal of protecting *its own employees*" and, unlike with Mr. Huck and the plaintiffs in this case, "exempting plaintiff[s] from the vaccine mandate would have limited [their] ability to perform [their] job[s]." *Cyr v. Bos. Med. Ctr.,* 2025 WL 269239 (D. Mass. Jan. 22, 2025), *Munroe v. Bos. Med. Ctr.,* 790 F. Supp. 3d 52 (D. Mass. 2025) *and Together Employees v. Mass Gen. Brigham Inc.*, 573 F. Supp. 3d 412 (D. Mass. 2021), aff'd, 32 F.4th 82 (1st Cir. 2022) (all also distinguishable because employers denied employee nurses and health care workers' requests for accommodation and demonstrated undue burden where requesting employees would have endangered the defendant employers' own employees and patients); *Antredu v. Mass. Dep't of Youth Servs.*, 2024 WL 1539725 (D. Mass. Apr. 9, 2024) (holding that employer demonstrated undue burden where plaintiff, a DYS employee's "position included in-person, one-on-one interactions with both youth, their families, and other employees.

Respectfully submitted,

Plaintiff Robb Huck,
By his Attorneys,


/s/ Sol J. Cohen_____
Sol J. Cohen, Esq.
BBO# 630776
scohen@cl-lawgroup.com
Coren Lichtenstein LLP
60 Walnut Street, 4th floor
Wellesley, MA 02481
Tel: (781) 997-1600


Jessica Joan Landry,
BBO # 711325
Ivy Law P.C.
2 Oliver Street, Suite 602
Boston MA, 02109
Tel: 617-209-9954
Email:jlandry@ivylawma.com


*For Plaintiffs Amoson, Ramsey, Savage, Schmidt, Silva, Singleton, and Welch*

By: /s/ Cameron L. Atkinson /s/
Cameron L. Atkinson, Esq.
        Admitted pro hac vice
ATKINSON LAW, LLC
122 Litchfield Rd., Ste. 2
P.O. Box 340
Harwinton, CT 06791
Telephone: 203.677.0782
Email: catkinson@atkinsonlawfirm.com

## <u>CERTIFICATE OF SERVICE</u>

I, Sol J. Cohen, hereby certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ *Sol J. Cohen*

Sol J. Cohen

Dated: April 8, 2026

.