UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| LISA AMOSON et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil No. 22-11963-LTS |
| | ) | |
| TAKEDA PHARMACEUTICALS USA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

ORDER ON MOTION FOR SUMMARY JUDGMENT (DOC. NO. 51)
AND RELATED SUPPLEMENTAL BRIEFING (DOC. NOS. 120, 123, 127)

April 24, 2026

SOROKIN, J.

Plaintiffs are eight former employees of Takeda Pharmaceuticals USA, Inc.  Each

worked in sales or customer-service roles, spending a significant portion of their work time

making in-person visits to healthcare providers ("HCPs") in medical offices, clinics, or hospital

settings.  Doc. No. 60 ¶¶ 27-97.[1]  After Takeda implemented a policy requiring all field-based

employees to become vaccinated against COVID-19 in September of 2021, each Plaintiff sought

a religious exemption.  Id. ¶¶ 117-271.  In particular, each Plaintiff sought to continue working

in-person with non-vaccine precautions in place (i.e., masking, testing, and social distancing),

with some also proposing remote work as an alternative accommodation.[2]  Takeda denied each

---

[1] Citations to "Doc. No. __" reference items filed on the electronic docket ("ECF") in the action that is the subject of this Order; pincites are to the page numbers in the ECF header or, where applicable, to the paragraph numbering within the document.
[2] According to Takeda, three Plaintiffs (Huck, Ramsey, and Silva) did not ask to work remotely during the interactive process.  Doc. No. 52 at 39 n.6.  The fact that some Plaintiffs did not request to work remotely does not materially impact the Court's analysis in this Order.

request based on its determination that the exemptions would impose an undue hardship.  Id. ¶¶ 273-274.  This lawsuit ensued.

This case was initially assigned to Judge O'Toole.  After the conclusion of discovery, Takeda moved for summary judgment.  Doc. No. 51.  Plaintiffs opposed the motion.  Doc. No. 59.  Plaintiffs also sought to strike two exhibits filed by Takeda in conjunction with its summary judgment motion—the declaration of Mary Elizabeth Denmark (Takeda's Head of U.S. People Advisory Group) and the expert report of Dr. Daniel Salmon.  Doc. No. 55.  On July 29, 2025, Judge O'Toole entered the following electronic docket entry resolving both motions:

> Plaintiffs' . . . motion to strike the declaration of Mary Elizabeth Denmark and the report of Dr. Daniel Salmon in support of Takeda Pharmaceuticals U.S.A., Inc.'s summary judgment motion is DENIED.  Defendant's . . . Assented-to Motion for Leave to File Notice of Supplemental Authority and . . . Assented-to Motion for Leave to File Second Notice of Supplemental Authority are GRANTED.
>
> After considering the parties' written submissions and oral arguments, the defendant's . . . motion for summary judgment is DENIED in its entirety.  The defendant's arguments that the plaintiffs "did not have sincerely-held religious beliefs precluding them from compliance with the Vaccine Policy" and that "[t]he undisputed evidence demonstrates that there was no reasonable accommodation available to [p]laintiffs that would not cause Takeda to suffer undue hardship," (Mem. in Supp. of Mot. for Summ. J., 21 et seq. and 38 et seq. (dkt. no. 52),) are vigorously opposed by the plaintiffs. (See Pls.' Mem. in Opp'n to Def.'s Mot. for Summ. J., 13 et seq. and 19 et seq. (dkt. no. 59).)
>
> "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (citation omitted).  The parties' factual and legal disputes cannot be resolved short of trial.

Doc. No. 77.

Thereafter, the case was randomly reassigned to the undersigned for trial, as Judge O'Toole has opted to no longer conduct trials as a senior judge.  The Court initially set May 4, 2026, as the start date for trial.  Doc. No. 96.  The trial date was later moved to May 11 to accommodate various scheduling conflicts of counsel and the Court.  Doc. No. 118.

Since the reassignment and in preparation for trial, the Court reviewed the summary judgment papers, the complaint, and the proposed jury instructions filed by the parties. From its review, the Court developed a concern that the issue of undue hardship required a more particularized analysis. On March 13, 2026, the Court convened a status conference, during which it advised the parties that it was considering the possibility of revisiting this aspect of Judge O'Toole's ruling and ordering supplemental briefing on just the undue-hardship issue. Doc. No. 109. The parties notified the Court that they were scheduled to attend a private mediation on March 23, 2026. In light of the upcoming mediation, the Court deferred deciding on whether to order supplemental briefing and ordered the parties to file a status report after the mediation updating the Court on any resolution reached.

On March 24, 2026, the parties filed a status report notifying the Court that the parties did not reach a settlement agreement during the mediation. Doc. No. 113. Accordingly, the Court directed the parties to submit supplemental briefing on whether there is a genuine dispute of material fact that accommodating Plaintiffs' exemption requests would have imposed an undue hardship on Takeda. Doc. No. 114. Takeda filed its supplemental memorandum on April 1, 2026. Doc. No. 120. Plaintiffs opposed on April 9, 2026, Doc. No. 123, and Takeda replied on April 13, 2026, Doc. No. 127.

The Court held a hearing on the supplemental papers on April 22, 2026. At the hearing, the Court summarized two tentative findings that it had gleaned from reviewing the record. First, the Court expressed its view that Takeda was entitled to summary judgment on its undue-hardship defense as to Plaintiffs' requests to work remotely, as this accommodation would have required Takeda to eliminate an essential function of each Plaintiff's position. Second, the Court opined that there remains a triable issue as to whether the alternative accommodation (masking,

testing, and social distancing) amounts to an undue hardship.  The parties provided argument on these issues, and the Court took the matter under advisement.

The Court now adopts the two tentative findings largely for the same reasons expressed at the hearing.  Thus, the Court VACATES that much of the prior ruling that denied summary judgment on the issue of whether Takeda had demonstrated that remote work constituted an undue hardship and enters summary judgment in Takeda's favor on that issue.  Because each Plaintiff presses the alternative accommodation about which a triable issue exists, all Plaintiffs are proceeding to trial.  In light of the foregoing, only a few brief points require further elaboration.

As a preliminary matter, a district court has the "power at any time prior to entry of its final judgment . . . to reconsider any portion of its decision and reopen any part of the case." Marconi Wireless Tel. Co. of Am. v. United States, 320 U.S. 1, 47 (1943); see also Fed. R. Civ. P. 54(b) ("[A]ny order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.").  Because Judge O'Toole's prior denial of summary judgment is an interlocutory order, the Court is authorized to reconsider it.  See Bethlehem Steel Exp. Corp. v. Redondo Constr. Corp., 140 F.3d 319, 321 (1st Cir. 1998) (holding that district court judge to whom case had been reassigned could grant defendant's motion for summary judgment after previous judge had denied motion); see also Fernández-Vargas v. Pfizer, 522 F.3d 55, 61 n.2 (1st Cir. 2008) ("[A] district court has the inherent power to reconsider its interlocutory orders, and we encourage it to do so where error is apparent." (citing Warren v. Am. Bankers Ins., 507 F.3d 1239, 1243 (10th Cir. 2007))).  Furthermore, the Court has discretion to reconsider interlocutory orders sua sponte.  See Jackson v. Roach, 364 F. App'x

138, 139 (5th Cir. 2010) (noting that it was "within the newly assigned judge's power to consider the Defendant's Motion [for summary judgment] sua sponte and vacate the first judge's order"); Fayetteville Invs. v. Com. Builders, Inc., 936 F.2d 1462, 1472 (4th Cir. 1991) (noting that "an interlocutory order" can "be reviewed by the district court, on motion or sua sponte, at any time prior to the entry of final judgment").

Pursuant to its authority to reconsider the prior denial of summary judgment, the Court finds that Takeda has established, as a matter of law, that accommodating Plaintiffs' requests to work remotely would have posed an undue hardship. The record indicates that in-person interaction with customers was an essential feature of each Plaintiff's job. Six of the eight Plaintiffs (Amoson, Huck, Schmidt, Silva, Welch, and Savage[3]) worked as sales representatives at Takeda ("Sales Representative Plaintiffs"). Doc. No. 60 ¶¶ 28, 81. Sales Representative Plaintiffs' central responsibility was making in-person calls to HCPs in their assigned region to market Takeda's products. While Takeda temporarily allowed sales representatives to conduct their calls remotely in the early days of the pandemic, by the fall of 2021, every Sales Representative Plaintiff had returned to conducting the majority of their sales calls in-person. See id. ¶ 43 (90% of Amoson's sales calls were conducted in-person); id. ¶ 47 (80% of Huck's HCPs conducted sales calls in-person); id. ¶ 54 (75% of Schmidt's HCPs conducted calls in-person); id. ¶ 60 (Silva spent 90% of work time doing in-person calls with HCPs); id. ¶ 71 (Welch was conducting in-person calls with "almost all" her HCPs); id. ¶ 88 (Savage was back to making in-person calls at normal pre-pandemic levels by late 2021).

---

[3] Savage's job title was "Territory Business Manager," but his job duties mirrored those of sales representatives. Doc. No. 60 ¶ 81.

In-person tasks were also essential to the jobs of the two remaining Plaintiffs.  Ramsey worked as a Regional Sales Trainer and an interim District Business Manager.  Id. ¶ 72.  A significant portion of her job involved in-person tasks.  See Doc. No. 52-2 at 14 (job description indicating that job required "[a]pproximately 80% travel").  Ramsey made sales calls, led training classes, worked one-on-one with sales representatives and their managers, and conducted "ride-alongs" with sales representatives, visiting "anywhere from three to ten HCPs per day."  Doc. No. 60 ¶¶ 73-77.  By late 2021, 60% of the HCPs in Ramsey's territory had returned to in-person sales calls.  Id. ¶ 80.  Singleton worked as a Patient Access Manager, a customer-service role which required him to meet with patients and HCPs in-person as requested.  Id. ¶ 91.  Indeed, his job description listed "50-75% Travel" as one of the requirements of his position.  Doc. No. 52-2 at 32.  During his in-person visits, he would provide training to nurses about Takeda's products and meet with patients to discuss getting insurance approval for treatments.  Doc. No. 60 ¶¶ 90-92.  Some of his customers required significant in-person assistance.  Id. ¶ 91.  Overall, Singleton "interacted with patients, doctors, nurses, insurance coordinators, and caregivers, approximately 50% of the time in person."  Id. ¶ 90.

Plaintiffs do not disagree that in-person work was a core feature of their jobs.[4]  Indeed, Plaintiffs have admitted to every fact about their field-based positions advanced in Takeda's statement of undisputed material facts, id. ¶¶ 27-97, and they concede that in-person work was an essential function of their positions.  See Doc. No. 59 at 9 (noting that "the essential functions . . . for a field-based employee" included "in-person interactions, ability to [be] out in the field, engaging with our healthcare providers and stakeholders and vendors").  These

---

[4] During the hearing, Plaintiffs' counsel argued that Singleton's job did not involve significant in-person tasks.  However, the undisputed facts about Singleton's job duties, which the Court has summarized in the text, tell a different story.

concessions, alone, establish that exempting Plaintiffs from their essential, in-person duties and allowing them to work remotely would have imposed an undue hardship on Takeda.[5] See Antredu v. Mass. Dep't of Youth Servs., 729 F. Supp. 3d 76, 84 (D. Mass. 2024) ("It likewise imposes an undue burden to require an employer to relieve an employee of her essential job functions."); Munroe v. Bos. Med. Ctr., 790 F. Supp. 3d 52, 60 (D. Mass. 2025) (same); cf. Kvorjak v. Maine, 259 F.3d 48, 57 (1st Cir. 2001) (in an ADA case, finding that the law "does not require an employer to accommodate a disability by [forgoing] an essential function of the position" (citation modified)). Accordingly, the Court finds that Takeda is entitled to summary judgment on its undue-hardship defense with respect to the remote-work accommodation.

As for the alternative accommodation of masking, testing, and social distancing, the Court upholds the prior denial of summary judgment, as there remains a genuine dispute of material fact about whether granting this accommodation would have constituted an undue hardship. Certainly, the undisputed record establishes that, at the time Takeda implemented its vaccine policy, the medical evidence indicated that vaccines were more effective at reducing transmission risks than alternative safety measures (i.e., masking, testing, and distancing). See Doc. No. 60 ¶¶ 106-112; Doc. No. 52-1 at 916-17. Furthermore, masking, testing, and distancing each presented significant limitations based on the challenges of implementing and

---

[5] Additional facts on the record confirm that accommodating remote work would have substantially increased costs to Takeda's business. Two studies conducted by Takeda suggest that allowing employees to do their work remotely would lead to a decline in Takeda's sales. Doc. No. 60 ¶¶ 98-104. Not only have Plaintiffs failed to submit contrary evidence, several Plaintiffs concede that they were less effective at their jobs when working remotely. See id. ¶ 38 (Amoson found it difficult to make sales calls remotely and found working in-person easier); id. ¶ 46 (Huck's sales initially declined during remote work); id. ¶ 67 (Welch found it "completely ineffective" to sell products over phone); id. ¶ 87 (Savage believed working in-person was the "most ideal way to do [his] job"); id. ¶ 95 (Singleton found building relationships with HCPs to be easier in-person).

ensuring compliance with such measures.  Doc. No. 60 ¶¶ 107-110.  Nonetheless, these undisputed facts about the relative advantages of the vaccine are not, on their own, sufficient to establish that accommodating alternative safety measures would have imposed an undue hardship as a matter of law in this particular case.

Takeda's arguments to the contrary are unavailing.  During the hearing, Takeda's counsel relied on two Circuit cases—Melino and Rodrique—to argue that evidence of the vaccine's efficacy suffices to establish undue hardship, but neither case supports such a categorical approach.  Indeed, both cases came before the Circuit on records in which the plaintiff conceded that the defendant could establish undue hardship if the vaccines were effective in reducing the spread of COVID-19.  See Melino v. Bos. Med. Ctr., 127 F.4th 391, 397 (1st Cir. 2025) ("[Plaintiff] does not dispute that [defendant] could establish undue hardship '[i]f the vaccines worked.'"); Rodrique v. Hearst Commc'ns, Inc., 126 F.4th 85, 94 (1st Cir. 2025) (noting that plaintiff "has staked his undue hardship argument on his claim that [defendant] has not presented competent evidence that vaccinated people are less likely to transmit COVID-19").  Based on the plaintiffs' concessions in those cases, the only pertinent issue on appeal was whether the defendants had "acted reasonably" based "on the objective, scientific information available to [them]" when they "determined that vaccinated employees are less likely to transmit COVID-19 than unvaccinated employees."  Rodrique, 126 F.4th at 91 (citation modified); accord. Melino, 127 F.4th at 398.  Those cases do not stand for the proposition that evidence of the vaccine's efficacy suffices for establishing undue hardship in every case.

Instead, the undue-hardship defense turns on whether the accommodation "would result in substantial increased costs in relation to the conduct of [the employer's] particular business," Groff v. DeJoy, 600 U.S. 447, 470 (2023)—an analysis that "requires courts to take 'into account

8

all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of an employer,'" Bazinet v. Beth Israel Lahey Health, Inc., 113 F.4th 9, 18 (1st Cir. 2024) (quoting Groff, 600 U.S. at 470-71). Here, consideration of "all relevant factors" raises various countervailing considerations about the costs of accommodation. For one, the record shows that Schmidt and Silva each encountered one HCP in their assigned regions requiring visitors to be vaccinated against COVID-19. Doc. No. 60 ¶¶ 53, 59. But Takeda has not shown or argued that allowing remote calls for just these HCPs or reassigning these HCPs to vaccinated sales representatives would have substantially increased costs to its operations. In any case, Takeda concedes that no other Sales Representative Plaintiffs encountered HCPs with similar vaccine requirements. Doc. No. 65 ¶¶ 284, 292, 307, 331.

Furthermore, while Plaintiffs' work required them to be in some proximity to HCPs and their patients, there is no evidence that Plaintiffs had to engage in close, physical contact with these parties. This distinguishes Plaintiffs' situation from similar vaccine-related cases finding undue hardship with respect to nurses providing medical care to patients, Munroe, 790 F. Supp. 3d at 60, correctional officers tasked with restraining or searching incarcerated individuals, Howe v. Mass. Dep't of Corr., No. 4:22-cv-40119-MRG, 2024 WL 3536830, at *2, *6 (D. Mass. July 25, 2024), or police officers responsible for providing first aid and conducting arrests, Order on Cross-Motions for Summary Judgment, Barbosa v. Mass. Dep't of State Police, No. 1:22-cv-12013-LTS (Apr. 23, 2026), Dkt. No. 101. Additionally, for the majority of Plaintiffs, Takeda has not produced any evidence establishing that their jobs required them to interact with other

9

Takeda employees in-person, such that they would jeopardize the safety of other employees.[6] See Doc. No. 60 ¶¶ 31-60, 81-88.  Nor has Takeda established that paying for and administering alternative safety measures would have imposed an undue hardship.  While Takeda asserts that "masking policies are difficult and expensive to implement," Doc. No. 60 ¶ 108, it has presented no evidence suggesting that implementing masking or testing measures for the eight Plaintiffs would have been prohibitively costly or infeasible.

In response, Takeda has pointed to several costs it would have incurred from allowing Plaintiffs to continue working in-person while masking, testing, and distancing.  Primarily, Takeda argues that having unvaccinated employees continue working in-person and risk spreading COVID-19 to customers would have heightened safety risks for patients and HCPs. Doc. No. 52 at 39-42.  It contends that these safety risks would have exposed Takeda to legal liability and undermined its reputation as a healthcare company.  Id. at 41 n.7; see Doc. No. 60 ¶¶ 1, 17.  While these safety, reputational, and legal risks present legitimate burdens, they do not, as a matter of law, establish undue hardship when understood within the particular circumstances of this case.  Viewing the totality of the record in the light most favorable to Plaintiffs, a reasonable factfinder could conclude that allowing Plaintiffs to continue working in-person with alternative safety measures would not have imposed an undue hardship on Takeda's business.

For all of these reasons, as well as the reasons articulated at the hearing, the Court VACATES that much of the denial of summary judgment as to the remote-work accommodation

---

[6] Undisputed facts about three Plaintiffs (Welch, Ramsey, and Singleton) indicate that their jobs involved some in-person interaction with other employees.  See Doc. No. 60 ¶¶ 64, 74-76, 93. However, these facts do not, without more, establish that these Plaintiffs' potential safety risks to other employees imposed an undue hardship on Takeda.

and enters summary judgment in favor of Takeda on that issue.  As to any other issue, the Court

maintains the prior denial of summary judgment.


SO ORDERED.


　/s/ Leo T. Sorokin　　　　　　　　
United States District Judge