**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LISA AMOSON, ROBB HUCK, ALECIA RAMSEY, LARRY HAROLD SAVAGE, JILLYN SCHMIDT, SANDRA SALAZAR SILVA, BRITT HAROLD SINGLETON, SUSAN WELCH,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>TAKEDA PHARMACEUTICALS U.S.A., INC.,<br><br>　　　　　　Defendant. | Case No.: 1:22-cv-11963-LTS |

## AMOSON PLAINTIFFS' OPPOSITION TO DEFENDANT'S OMNIBUS MOTIONS IN LIMINE

Plaintiffs Amoson, Ramsey, Savage, Schmidt, Silva, Singleton, and Welch hereby submit this memorandum of law in opposition to Defendant Takeda Pharmaceuticals U.S.A., Inc.'s omnibus motions in limine (Dkt. 149).

**I.    The Court Should Not Exclude Evidence Relating To Medical Accommodations.**

The Court should deny Takeda's motion in limine to exclude evidence of medical accommodations.

**A.  Any medical accommodations Takeda granted are highly relevant.**

Takeda first argues that any medical accommodations it granted are irrelevant to the issue to the highly individualized inquiry of whether granting a religious accommodation to the Plaintiffs would pose an undue hardship to Takeda. Dkt. 150, pp. 7-8. It submits that evidence regarding medical accommodations is irrelevant because the ADA employs a more stringent standard than

Title VII and because its granted medical accommodations were temporary. *Id*. at pp. 8-9. Neither argument carries the day.

First, Takeda's argument that the ADA imposes a more stringent standard than Title VII did under the pre-*Groff* Title VII standard does not control admissibility. If anything, it is more of a mitigation argument for the jury. *Groff v. DeJoy*, 600 U.S. 447, 470 (2023) sets the standard for Title VII religious accommodation cases: "an employer must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business."[1] At the very least, *Groff*'s new standard – applicable to this case – is at least akin to the ADA's "significant difficulty of expense" standard. Thus, Takeda's conclusion that a medical accommodation did not cause an undue burden is highly relevant (FRE 401) and probative of whether a similar religious accommodation would cause an undue burden.

Second, even though the accommodation process is an individualized process, evidence, including from Takeda's corporate representatives, about medical accommodations granted to similarly situated employees, their duration, and whether they were renewed on an ongoing basis is directly relevant to disproving Takeda's claim that accommodating the Plaintiffs was an undue burden.

Third, even if medical accommodations were only temporary, they are still relevant to whether unvaccinated individuals could safely perform some or all of their job functions without posing an undue hardship to Takeda. The temporary nature of medical accommodations, if true, goes to weight of the evidence, not admissibility.

---

[1] To the extent Takeda argues that *Groff* held that the ADA and Title VII standards are different, it places more weight on that passage than it can rightly bear. *Groff* simply declined to blindly adopt the ADA standard, and it left it to courts and juries to figure out what constitutes "substantial increased costs" using a common sense inquiry. *Groff*, 600 U.S. at 470-71.

If the Court, however, considers these issues to be a closer question, the Court should reserve decision until it sees how this evidence fits into the overall picture of the trial and Takeda's claims.

### B. Takeda Will Not Be Prejudiced By The Introduction of Evidence Regarding Medical Accommodations.

Takeda also argues that it will be prejudiced by the introduction of evidence regarding medical accommodations. Dkt. 150, pp. 4-6. It repeats its arguments as to relevance for the probative test of the FRE 403 balancing test, and it argues that the prejudice it will suffer is that a jury will be confused by the impression that Takeda could have accommodated the Plaintiffs because it medically accommodated other employees. *Id*. It also argues that the Plaintiffs failed to timely disclose witnesses. *Id*. These arguments do not carry the day.

First, the evidence of medical accommodations is directly probative of the issues in this case. Takeda has argued that it could not religiously accommodate any field-based employees because of health and safety concerns that posed an undue burden on it. If it accommodated field-based employees for medical reasons, it is probative of whether that burden was really what it claimed it to be. The costs and concerns are identical in both situations.

Court have recognized that proof of inconsistent treatment is appropriate in other Title VII contexts. For instance, in disparate treatment cases, the First Circuit has recognized that an employee may present circumstantial evidence of discrimination. *Kosereis v. Rhode Island*, 331 F.3d 207, 212) (1st Cir. 2003). Inconsistent treatment and actions are well-recognized methods of proving disparate treatment. *Id*. at 214.

Here, the introduction of evidence showing an inconsistent approach to how Takeda evaluated its concerns and perceived burdens is the precise type of evidence that is appropriate in Title VII cases. It is highly probative, and the Court should permit it.

Second, Takeda's concerns of prejudice are speculative and pay no heed to the effect of jury instructions. The Court can easily obviate Takeda's concerns by giving the jury appropriate instructions on any distinction that it perceives between Title VII and ADA standards. It can also provide limiting instructions as to any evidence presented. Takeda makes no effort to explain why these intermediate steps are not sufficient, and a wholesale exclusion of evidence is necessary. Instead, it simply claims that the only accommodation that it offered on medical grounds was remote work, but points to no evidence supporting that. In other words, it has not provided the Court with anything to justify excluding an entire category of evidence that is directly relevant and probative to the key issue in this trial.

Lastly, the Amoson plaintiffs have already informed Takeda that they do not intend to call as witnesses the Takeda employees that they knew were granted medical accommodations. Thus, there is no Fed. R. Civ. P. 37 issue.

## II.    The Court Should Not Exclude Evidence About Client Healthcare Providers' Lack Of Vaccination Requirements For Them.

Takeda argues that the Court should exclude any evidence about whether its client healthcare providers had vaccination requirements or not on the grounds that the evidence would be hearsay, is irrelevant, and would waste trial time, confuse the issues, mislead the jury, and unfairly prejudice Takeda. Dkt. 150, p. 6.  The Court should deny that motion.

First, as to hearsay, the evidence offered would not be hearsay. The Plaintiffs would each testify that few to no client healthcare providers that they interacted with as part of their daily jobs communicated or otherwise established a vaccination requirement before meeting with them or refused to meet with them without verification. They would also testify that no client healthcare provider declined to meet with them due to a lack of vaccination. The absence of such a communication, as opposed to an actual statement "we have (or do not have) a vaccination

4

requirement" is not a statement within the meaning of FRE 801(c). It is a directly observable fact that the Plaintiffs have personal knowledge of under FRE 602.

In the alternative, even though the Plaintiffs do not intend to elicit actual statements, such statements would be admissible under FRE 801(c) not for the truth of the matter asserted, but for the limited purpose of showing the state of affairs Takeda was aware of (or should have been aware) in the plaintiffs' territories and their effect or lack of effect on Takeda's purported basis for its vaccination policy and denial of religious accommodations.

Second, based on their briefing, it is unclear whether Takeda intends to offer evidence of the President Biden Administration policy requiring healthcare providers receiving Medicare/Medicaid funding to implement vaccination requirements.[2] Their argument would clearly be that client healthcare providers' obligation to require vaccination would justify Takeda's parallel requirement. The Plaintiffs should be entitled to present the other side of the picture with evidence that is clearly admissible.

Third, the evidence is relevant. Takeda claims undue hardship based on reputational and safety concerns. Evidence that no client healthcare providers required vaccination for the plaintiffs in their territories greatly undercuts Takeda's claim of reputational hardship. Moreover, client healthcare providers had their own specialized, clinical knowledge of treating their patient populations and, arguably, were in a better position to assess the safety risks to them. That is evidence that a jury should hear and weigh for itself.

The evidence is also relevant to Takeda's repeated insistence that this case should be treated as a highly individualized case. That argument cuts both ways. If undue hardship is inherently

---

[2] The Plaintiffs will strongly object to any such evidence as being undisclosed, hearsay, and more prejudicial than probative.

individualized to each Plaintiff's job duties, territory, and circumstances, then it is highly and directly relevant that the client healthcare providers in each Plaintiff's territory did not have vaccination requirements in assessing undue hardship for each of them. Takeda cannot invoke individualization to exclude medical accommodation comparators in one breath and then invoke it to exclude HCP vaccination-policy evidence in the next. These arguments are in tension. The jury should hear the individualized evidence bearing on each Plaintiff's actual territory and customer base.

Fourth, the evidence will not confuse the issues, mislead the jury, or unfairly prejudice Takeda. Takeda claims that it will need a trial within a trial involving extensive fact-finding about each client health-care provider's specific vaccination policy. Dkt. 150, pp. 11-13. It also claims it will be unable to effectively cross-examine the plaintiffs. *Id*. Those concerns are greatly exaggerated. The Plaintiffs' testimony will be narrow and targeted. They called on client healthcare providers in their territories. Those providers did not vaccination requirements as a precondition to meetings. Those providers never expressed concerns about seeing unvaccinated representatives. That is testimony that does not require expert witnesses, policy documents, or a mini-trial as to the specifics of those policies. The probative value — bearing directly on whether Takeda's reputational concern was founded in reality — substantially outweighs any marginal risk of confusion.

Fifth, any prejudice that Takeda claims or the Court perceives can be cured by appropriate limiting instructions.

Thus, the Court should deny this motion.

**III.    The Amoson Plaintiffs Largely Do Not Oppose Takeda's Motion To Preclude Them From Offering Lay Testimony Regarding The Actual Safety Or Efficacy Of The COVID-19 Vaccine.**

Takeda moves to preclude the Plaintiffs from offering lay opinions about the actual safety or efficacy of COVID-19 vaccinations. Dkt. 150, pp. 13-15. The Amoson Plaintiffs do not object to most of the motion, but they ask the Court not to render a ruling so broad that they violate it through foundational background examination.

The Plaintiffs will likely each offer short background testimony to provide context for the jury. Among other things, that testimony will likely contain some sort of question and answer regarding what the religious basis for their accommodation requests were. To answer those questions truthfully, some of the Plaintiffs will need to testify briefly as to their concerns at least about the safety of COVID-19 vaccination. The Plaintiffs also will testify how important their religious beliefs are to them and how they try to live their lives in accordance with them during their testimony regarding damages. Their testimony could include some remarks about precautions that they took consistent with their religious beliefs and their perception of COVID-19 vaccination. The Amoson plaintiffs are not looking to devote any substantial portion of time to relaying their views of actual safety or efficacy of COVID-19 vaccination to the jury, but some mention of their perceptions may be inevitable.

The Court should not close the door to that limited testimony, but it may properly, and should, close the door to actual opinion testimony that wastes time.

**IV.** **The Amoson Plaintiffs Have Not Disclosed Any Exhibits Or Testimony Regarding COVID-19 or COVID-19 Vaccine Efficacy Developed After Takeda's Termination Decision.**

Takeda moves to exclude any evidence regarding COVID-19 or COVID-19 vaccinate safety and/or efficacy that became available after Takeda terminated the Plaintiffs. Dkt. 150, p. 15. The Amoson plaintiffs do not believe that they disclosed any such evidence. In their meet and confer with Takeda, they only sought to clarify that the cut-off date would be at the date of termination, not at the date Takeda adopted its COVID-19 vaccination policy. It appears from the face of the motion that Takeda agrees so there is no issue. Dkt. 150, p. 17.

**V.** **The Court Should Not Take Judicial Notice Of And Admit Publicly Available Information Regarding COVID-19 and COVID-19 Vaccine Efficacy Available On Or Before Takeda's Termination Decision.**

The Court should deny Takeda's motion for judicial notice and to admit scientific evidence because its practical consequences would be to take this case out of the hands of the jury.

FRE 201 governs judicial notice of adjudicative facts that are "not subject to reasonable dispute because [they] (1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources who accuracy cannot reasonably be questioned." Judicial notice carries heavy weight in a civil jury trial: "In a civil case, the court must instruct the jury to accept the noticed fact as conclusive." FRE 201(f).

The usual process of "establishing adjudicative facts [is] through the introduction of evidence, ordinarily consisting of the testimony of witnesses. If particular facts are outside of reasonable controversy, this process is dispensed with as unnecessary. A high degree of indisputability is the essential prerequisite." FRE 201, *Notes of Advisory Committee On Proposed Rules*, Subdiv. (a). "A high degree of indisputability is the essential prerequisite." *Id*.

8

Takeda falls well short of meeting that standard here. It asks the Court to notice not merely that certain documents existed, but that the *conclusions in those documents were correct and should have driven Takeda's decision*. Dkt. 150, p. 12. That is a bridge too far.

The scientific questions Takeda relies on – vaccine transmission reduction, protection of third parties, the durability of vaccine efficacy against various COVID-19 variants – were the subjects of active genuine scientific debate and explicitly stated government uncertainty in September-November 2021. *See generally* Dkt. 155. In particular, the Amoson plaintiffs have provided evidence to the Court showing that the FDA itself acknowledged the limitations of scientific evidence in determining long-term efficacy against COVID-19 or efficacy against new variants. Dkt. 155, pp. 5-7. They further provided evidence that the CDC found that the COVID-19 vaccinations were ineffective against the Delta variant. *Id*. at pp. 7-8. Lastly, they presented evidence of a large scale study that found a decline in COVID-19 vaccination efficacy over time. *Id*. at p. 8. Beyond that, as Plaintiff Huck noted in his opposition, Takeda's own materials acknowledge scientific uncertainty and evolution. Dkt. 166, p. 6.

In other words, nothing that Takeda seeks to offer is beyond reasonable dispute. In fact, it was repeatedly qualified and contradicted by the very authorities Takeda cites as being the reason why the Court should notice them. The CDC itself updated its guidance multiple times during this period. That there was legitimate scientific uncertainty is not a fringe position — it was reflected in the scientific literature that was itself publicly available at the time. A court cannot take judicial notice of a disputed scientific proposition by simply declaring it indisputable without usurping a jury's factfinding role.

Nor should the Court permit Takeda to use judicial notice as a substitute for expert testimony. The specific scientific propositions Takeda wants the Court to notice — that COVID-

9

19 vaccines reduced transmission, that unvaccinated employees posed a meaningful infection risk to healthcare providers in field settings, that Takeda's epidemiological assessments were well-founded — are precisely the kind of technical questions that require expert testimony. In fact, Takeda itself created an expert team to make its own decisions and evaluate the science and data. Dkt. 150, p. 13. If Takeda could not make a decision without experts, neither the Court nor the jury cannot render a just verdict without testing those experts in the crucible of trial. Judicial notice cannot be weaponized to preemptively validate the output of Takeda's own internal scientific committee without giving the Amoson Plaintiffs an opportunity to test it. Using FRE 201 to short-circuit what should be contested expert evidence is an improper application of the rule.

The practical effect of granting Takeda's motion would be to allow Takeda to argue to the jury: "The Court has already determined the science was sound — you don't get to second-guess it." *See generally* FRE 201(f). That would effectively deprive Plaintiffs of their right to challenge the reliability and completeness of the scientific foundation for Takeda's hardship determination, or to dispute the weight to be given to any admitted evidence. If the Court denies the Plaintiffs' *Daubert* motion as to Dr. Salmon, the Plaintiffs are entitled to cross-examine both Dr. Salmon and whoever from Takeda testifies about the science considered, what science was considered, and how that science applied to the Plaintiffs' individual circumstances. Judicial notice as Takeda requests it would improperly insulate those witnesses from meaningful challenge.

The Court should also not admit this evidence for other reasons.

First, the documents are inadmissible because they constitute hearsay. Takeda is not just asking the Court to make sure the jury knows that the CDC and other government branches issued guidance. It is asking the Court to admit these documents with a finding that the accuracy of the information and guidance contained in them cannot be reasonably questioned. Dkt. 150, p. 12. It

10

is asking the Court to compel, through judicial notice, a finding that the guidance was *correct*, that vaccines *did* reduce transmission (even though the CDC itself called that proposition into question, and that Takeda's undue hardship determination was therefore *objectively reasonable*. In other words, the documents – out of court statements – are being offered the truth of the matter asserted. There are no applicable hearsay exceptions that save the question here. In fact, the closest hearsay exception (the learned treatises exception – FRE 803(18)) would require expert testimony, but would bar the document itself from being admitted.

Second, as Plaintiff Huck notes, the proffered documents are voluminous and irrelevant. Dkt. 166, p. 9. As such, admitting these materials would be cumulative of Takeda's decision-makers' testimony as to what they relied on, would waste time, and would be unduly prejudicial for all of the reasons set forth above. Thus, with the exception of the document bates-labeled Takeda 006424, these documents should be excluded under FRE 401 and 403.

For all of these reasons, the Court should deny the motion to admit this evidence.

## VI.    The Amoson Plaintiffs Do Not Oppose Takeda's Motion To Exclude Any Evidence Regarding Plaintiffs' Requests For Remote Work.

The Amoson Plaintiffs do not oppose Takeda's motion to exclude any evidence that relates to their requests for remote work as an accommodation in light of the Court's April 24, 2026 summary judgment ruling. Dkt. 129.

## VII.    The Court Should Deny Takeda's Motion Regarding Damages As It Relates To The Amoson Plaintiffs.

Takeda's motion to exclude evidence regarding future earnings as speculative is difficult to follow as to the Amoson plaintiffs because it does not specify whether it is strictly addressing issues of front pay or front pay and backpay. Dkt. 150, pp. 15-17. The Amoson plaintiffs have only

sought backpay as to their earnings damages so issues strictly relating to front pay are inapplicable to them.

When the undersigned took over this case as lead counsel, he worked with the Amoson Plaintiffs to update their damages calculations in advance of the trial originally scheduled for May 2026. Those updated discovery responses, provided to Takeda in March and April 2026, contained clear formulas for how damages were calculated. *See* **Ex. A – Combined Supplemental Interrogatory Responses.** Each response goes year-by-year, provides the Plaintiffs' total compensation from their W2s, subtracts their mitigation of damages, and pro-rates the annual figures where appropriate. It also contains any additional benefits that they lost. There is nothing speculative about that endeavor. Takeda might disagree with the calculations, but that is a question to take up in the crucible of trial, not at the threshold in an admissibility inquiry. Thus, the Court should deny this motion.

## VIII. The Court Should Deny Takeda's Motion To Exclude Witnesses Who Were Allegedly Never Disclosed.

Takeda has filed a motion to exclude witnesses who were not disclosed in the Plaintiffs' Fed. R. Civ. P. 26(a) disclosures. The Court should deny that motion.

To the extent the parties have exchanged objections, the Amoson plaintiffs listed the following individuals who Takeda objected to on Rule 37(c) grounds: Rick Ascroft, Beth Dean, Pete Fresca, Roberta Newcomb, Paula Niemann, Noreen Dowd, Susan Kondik, Tracy McConnell, and Mary Elizabeth Denmark.

First, as to Rick Ascroft, Beth Dean, Paula Niemann, Noreen Dowd, Roberta Newcomb, and Pete Fresca, each of these individuals is a senior Takeda employee who was involved in the decision to first grant, and then to deny, Britt Singleton's accommodation decision. Takeda has known of their involvement all along, and, because they are Takeda employees, they had all of the

opportunity in the world to conduct whatever investigation that they needed to get these employees' version of events. In fact, Takeda itself listed Pete Fresca as one of its witnesses.

Second, the Amoson plaintiffs no longer intend to call Susan Kondik and Tracy McConnell so any objections as to them are moot.

Lastly, Mary Elizabeth Denmark was Takeda's designated corporate representative for the corporate representative deposition in this case. Takeda made her a witness in this case, and there is no surprise or prejudice to Takeda that the Plaintiffs want to call her as a witness now.

In sum, even now, Takeda can investigate its own employees at will. Thus, there is no basis to exclude witnesses for which Takeda produced the information that led to their discovery and who were an integral part of this case.

**IX.     The Court Should Deny Takeda's Motion To Exclude Any Evidence Regarding Plaintiffs' Religious Beliefs Or The Sincerity Of Those Beliefs.**

The Court should deny Takeda's motion to exclude any evidence regarding the Plaintiffs' religious beliefs or the sincerity of those beliefs.

First, the nature and depth of the Plaintiffs' religious beliefs is relevant to damages. The Plaintiffs are seeking emotional distress and punitive damages. The jury's assessment of the emotional harm caused by Takeda's conduct is informed by understanding who the Plaintiffs are, what their faith means to them, and how being forced to choose between their religious convictions and their livelihood affected their lives.

While the Plaintiffs do not intend to present as extensive evidence of sincerity or to spend any time on the threshold of sincerity, they do intend to testify as to what role their faith plays in their lives and what impact Takeda's conduct had on them. Barring the Plaintiffs from presenting that limited evidence would deprive them of the ability to fairly present their damages case.

Second, the jury needs a contextual narrative to avoid confusion. Without some threshold testimony as to who the Plaintiffs are and how this case came to be, the jury will hear this case in a confusing vacuum without any understanding of the context. A bare stipulation that tells the jury nothing about the humanity in this case leaves the jury with an abstract legal dispute rather than the facts necessary to render a fair verdict.

Again, the Plaintiffs are not looking to relitigate their theology or the sincerity of their religious beliefs. Nor are they looking to suggest that the jury should find liability because they have sympathy for their religious views. They are simply looking to present evidence as to the necessary context for the jury to fairly determine damages if they find liable.

To alleviate any concerns, the Court is well-equipped to provide the jury with a carefully crafted limiting instruction, but it should not adopt the extreme position of barring any such evidence.

Dated: May 22, 2026

Respectfully Submitted

By: /s/ Cameron L. Atkinson /s/
Cameron L. Atkinson, Esq.
ATKINSON LAW, LLC
122 Litchfield Rd., Ste. 2
P.O. Box 340
Harwinton, CT 06791
Telephone: 203.677.0782
Email: catkinson@atkinsonlawfirm.com

Brian Unger, Esq.
BBO No. 706583
THE LAW OFFICES OF WARNER
MENDENHALL, INC.
20 Park Plaza, 400-4
Boston, MA 02116
Telephone: 617.297.2227;
Fax: 330.762.9743
brian@warnermendenhall.com

14

## CERTIFICATION OF SERVICE

The undersigned hereby certifies that, on the foregoing date, a copy of the foregoing was served via the Court's CM/ECF system to all counsel of record who have entered an appearance in this case.

/s/ Cameron L. Atkinson /s/