**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LISA AMOSON, ROBB HUCK, ALECIA RAMSEY, LARRY HAROLD SAVAGE, JILLYN SCHMIDT, SANDRA SALAZAR SILVA, BRITT HAROLD SINGLETON, SUSAN WELCH, <br><br> Plaintiffs, <br><br> v. <br><br> TAKEDA PHARMACEUTICALS U.S.A., INC., <br><br> Defendant. | Case No.: 1:22-cv-11963-LTS |

## AMOSON PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF THEIR REQUEST TO PRESENT EVIDENCE OF CLIENT SWAPPING AS AN ACCOMMODATION

Pursuant to the on-the-record colloquy on May 27, 2026, the Amoson Plaintiffs – Lisa Amoson, Alecia Ramsey, Larry Savage, Jillyn Schmidt, Sandra Silva, Britt Singleton, and Susan Welch – hereby submit this memorandum of law in support of their request to present evidence of client swapping as an accommodation.

As the undersigned reads the colloquy between the Court and counsel, Defendant Takeda Pharmaceuticals objected to the presentation of this evidence as being previously undisclosed. The Court also had concerns about the prior disclosure issue as well as evidentiary and legal foundation. The Amoson Plaintiffs, thus, address the prior disclosure issue first, followed by the evidentiary and legal foundation.

I.      **Prior Disclosure:**

To the best of the undersigned's knowledge,[1] Takeda served identical written interrogatories on each of the plaintiffs in this case. *See, e.g.*, **Exhibit A – Interrogatories to Jillyn Schmidt.** These interrogatories did not contain any request that would apprise the plaintiffs that Takeda was seeking information as to theory of accommodations. Instead, the interrogatories focused on damages, employment history, communications, identification of witnesses, medical history, and other interrogatories that went to the sincerity issues in the case. *See, e.g.*, **Exhibit A.**

Likewise, Takeda deposed each of the plaintiffs for essentially a whole day. It had ample opportunities to ask them to list every accommodation that they were seeking from Takeda. It chose not to.

For three of the plaintiffs – Lisa Amoson, Susan Welch, and Larry Savage, Takeda chose not to ask about either the accommodations that Amoson, Welch, and Savage initially sought from Takeda or all of the accommodations that they would have been willing to accept. In these depositions, the closest Takeda got to any discussion of potential accommodations was whether Susan Welch was willing to wear a mask and continue to take COVID-19 tests.

For most of the remaining plaintiffs, Takeda chose to only discuss accommodations in the limited sense of reviewing the plaintiffs' written accommodation requests or by posing specific questions on what they would have been willing to continue doing. **Exhibit B – Singleton Depo. Excerpt, pp. 116-129; Exhibit C – Schmidt Depo. Excerpt, pp. 279-80; Exhibit D – Ramsey Depo. Excerpt, p. 335; Exhibit E – Silva Depo. Excerpt, pp. 135-36.**

---

[1] The undersigned has had substantial difficulty deciphering the file provided to him by prior counsel. If he has somehow missed additional interrogatories or more individualized interrogatories, he apologizes to the Court.

In other words, Takeda did nothing to actually probe the full scope of the plaintiffs' theories on what would count as reasonable accommodations. It posed no written interrogatories requiring the plaintiffs to list every theory of reasonable accommodation. It made no efforts in their depositions to pursue the same information. Accordingly, Takeda cannot now claim surprise or prejudice from the Amoson Plaintiffs' intent to present evidence of client swapping as a potential accommodation.

There's more. The concept of client swapping – i.e., having a vaccinated colleague cover any in-person visit to a facility that required vaccination status, while the unvaccinated plaintiffs continued to perform their responsibilities normally – flows directly and logically from the testimony Takeda itself elicited at these depositions. For instance, Takeda walked Britt Singleton through his three written accommodation proposals initially made to Takeda, and learned that he had previously covered colleagues' territories. **Exhibit B – Singleton Depo. Excerpt, pp. 122-23.** Singleton also testified that his manager or another colleague could cover for him on in-person visits as he had done previously. *Id.* at pp. 122-24. Singleton further testified that he deemed colleague coverage part of one of the three accommodation requests that he had made to Takeda. *Id.* at pp. 122-24.

Jillyn Schmidt testified at her deposition that she had a partner and described how her partner could cover for her if she could not go. **Exhibit C – Schmidt Depo. Excerpt, pp. 279-80.**

In short, the building blocks of a client-swapping accommodation theory were present throughout the plaintiffs' depositions, and Takeda – a well-heeled, counseled party – simply chose not to inquiry further into that testimony. Takeda's deliberate, strategic choices not to probe the plaintiffs' theories of reasonable accommodations do not give rise to a prior disclosure issue that calls for sanctions. Those choices are choices that Takeda must live with, and responsibility for

those choices cannot justly shift to the plaintiffs in the form of preventing them from presenting a significant, and likely winning, theory of their case.

Each of the plaintiffs will offer similar testimony about colleagues in their territory who could have covered for them as well as how they have previously covered for their colleagues. That is fair and powerful testimony that helps the jury reach a just result in this case. The Court should let the jury hear that testimony.

## II.   Legal Issues:

The primary legal issue that the undersigned's notes indicate at the May 27, 2026 hearing was whether employees are limited to the accommodations that they initially requested from Takeda prior to litigation. The answer is no.

*Groff v. DeJoy*, 600 U.S. 447, 473 (2023) held that "Title VII requires that an employer reasonably accommodate an employee's practice of religion, not merely that it assess the reasonableness of a particular possible accommodation or accommodations." *Groff* described this as a "distinction" that "matters." *Id*. at 473. The Supreme Court explained that, faced with a particular accommodation request, "it would not be enough for an employer to conclude that forcing other employees to work overtime would constitute an undue hardship." *Id*. at 473. Instead, the employer must consider "other options, such as voluntary shift swapping." *Id*. at 473. Accordingly, *Groff* itself makes clear that the trial question is not whether the plaintiffs made a perfect accommodation request or whether Takeda was justified in rejecting their proposed accommodations. Instead, the question for the jury is whether Takeda could have reasonably accommodated the Amoson plaintiffs and whether it chose not to do so.

Additionally, *Ansonia Bd. Of Educ. v. Philbrook*, 479 U.S. 60, 68-69 (1986) discussed the legislative history underlying Title VII's religious accommodation provision and held that neither the legislative history or text require "an employer to choose any particular reasonable accommodation." Instead, the legislative history supports the conclusion that Title VII requires "bilateral cooperation" to search "for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business." *Id*. at 69 (cleaned up).

Thus, to the extent that the Court concludes that the Amoson plaintiffs did not articulate client swapping as a possible accommodation (even though they did), that conclusion does not prohibit them from presenting evidence that client swapping was a feasible and reasonable accommodation.

## III.   **Evidentiary Issues:**

The Amoson plaintiffs do not see any obvious evidentiary issues with their proposed testimony, and they submit that any evidentiary issues are best resolved at trial. Nonetheless, they reserve their right to respond to any evidentiary arguments raised by Takeda.

The Amoson plaintiffs intend to testify that they had colleagues at work who were available to cover any Takeda clients who refused to meet with unvaccinated sales representatives. They also intend to testify that they themselves previously covered for other sales representatives during vacations and other extended time periods such as FMLA leave and maternity leave. They will also testify that they were willing to trade clients with their colleagues in order to alleviate some of the workload.

This testimony meets the personal knowledge requirement of Fed. R. Evid. 602. It is not hearsay or at least falls within hearsay exceptions. It is relevant to the undue hardship issue and damages. Thus, the Court should deem it admissible.

Dated: June 10, 2026                    Respectfully Submitted

                                        By: /s/ Cameron L. Atkinson /s/
                                        Cameron L. Atkinson, Esq.
                                        ATKINSON LAW, LLC
                                        122 Litchfield Rd., Ste. 2
                                        P.O. Box 340
                                        Harwinton, CT 06791
                                        Telephone: 203.677.0782
                                        Email: catkinson@atkinsonlawfirm.com

                                        Brian Unger, Esq.
                                        BBO No. 706583
                                        THE LAW OFFICES OF WARNER
                                        MENDENHALL, INC.
                                        20 Park Plaza, 400-4
                                        Boston, MA 02116
                                        Telephone: 617.297.2227;
                                        Fax: 330.762.9743
                                        brian@warnermendenhall.com

## CERTIFICATION OF SERVICE

The undersigned hereby certifies that, on the foregoing date, a copy of the foregoing was served via the Court's CM/ECF system to all counsel of record who have entered an appearance in this case.

/s/ Cameron L. Atkinson /s/