# Exhibit C

LISA AMOSON, ROBB HUCK, TROBY LANE PARRISH, ALECIA RAMSEY, LARRY HAROLD SAVAGE, JILLYN SCHMIDT, SANDRA SALAZAR SILVA, BRITT HAROLD SINGLETON, SUSAN WELCH

vs.                      CASE NO. 1:22-cv-11963-GAO

TAKEDA PHARMACEUTICALS U.S.A., INC.

VIDEOTAPED VIDEOCONFERENCE DEPOSITION OF

JILLYN SCHMIDT

Taken October 10, 2023

REPORTED BY KELLY L. GUILLIAMS, CCR

MAGNA LEGAL SERVICES

866-624-6221

www.MagnaLS.com



Page 278

CROSS-EXAMINATION

QUESTIONS BY MR. DeMATTEO:

Q    I only have a few questions.  Good afternoon, Miss Schmidt.

A    Hi.

Q    Just to recap, what was your territory when you were most recently working for Takeda?

A    I had from parts of Kansas City -- it was parts of Kansas City all the way across like I-70 down to I believe I had Goodland as well.  And below Kansas City -- or sorry, below I-70, I had Ellsworth, so that would be kind of in the middle, Ellsworth and Great Bend, small towns through there. It was a very, very big territory.

Q    Was the entire territory within the State of Kansas?

A    Yes, sir.

Q    Did Kansas have any vaccine requirement for visiting medical offices that you were aware of?

A    No.  Actually, Kansas in January of 2022 came out with a law that employers were not allowed to mandate vaccines.

Q    So in terms of policy, I mean to the extent there were any policies regarding masking, testing, vaccine -- vaccinations involving medical



offices, were those policies that were set by the offices themselves?

A    Yes.  Some of the offices set policies that -- of masking, and then the one we spoke of for -- to do lunch, vaccine, but most of them did not have any policies for people coming -- coming in that I -- that I -- that were affecting me when I was still in the -- when I was in the field.

Q    How did you handle the -- that lunch policy that I believe Stonecreek had?

A    Yeah.  Well, we -- you could do virtual lunches.  My partner, it was a -- it's -- it's an office that was very important, so my partner would also set up a virtual lunch there so that it would be on, you know, virtual, and her and there.  If there -- if I couldn't go, then she would take the office.  So that -- you know, that's kind of it. And then -- so yeah.

Q    Did you have any religious objection to wearing a mask?

A    I -- I don't.  I don't like it, but that -- that's not going to -- I don't -- I don't like it, but it's not in -- injecting something in me that I can never -- I can take the mask off, I can't take a vaccine out of me.



Page 280

Q    So was -- was wearing a mask something that you would have been willing to continue doing?

A    I would have, yes, and I put that -- I stated that I would mask and test to stay in the position I had.  I had -- I gave three options of things I could do.

Q    So then you also didn't have any religious objection to testing for COVID-19; right?

A    No, I did not, because I had to do it to stay employed earlier, so I tested and I was very diligent about getting it.  Even when I was on vacations, I had to go find camp -- when I was camping in the middle of nowhere, go find a facility that would mail my test in.  So I -- I took it very seriously.

Q    That's all I have.  Thank you for your time.

MS. ENGELMAN:  Nothing more from me.

THE VIDEOGRAPHER:  This ends today's deposition of Jillyn Schmidt.  The time is 4:49 p.m. We're going off the record.

(Whereupon, the video record concluded.)

THE COURT REPORTER:  What about signature?

MR. DeMATTEO:  We'll waive signature.

THE COURT REPORTER:  Okay.  And did you



Page 281

need a copy?

MR. DeMATTEO:  Yeah, I'll type my E-mail address into the box, I know your company probably has it, but I don't think I gave it to you yet today.  Obviously, Keri and I can follow up with any odds and ends of whether we need to schedule another day.

MS. ENGELMAN:  Yeah, we'll follow up with you.

THE COURT REPORTER:  What do you like to get transcript wise?

MR. DeMATTEO:  I prefer just full size PDF.  We don't need a hard copy.

THE COURT REPORTER:  And what about do you want the exhibits?

MR. DeMATTEO:  Oh, yes, please.

THE COURT REPORTER:  Keri, you had said the whole package?

MS. ENGELMAN:  Yeah, I think we said we would just figure out what -- I don't know what we're ordering across all these depositions, so we just need to be consistent.

(Thereupon, the deposition of JILLYN SCHMIDT concluded at 4:53 p.m.)

[Signature Waived By Agreement Of Counsel & Witness]



Page 282

- REPORTER'S CERTIFICATE -

State of Missouri   )

County of St. Louis )

I, Kelly L. Guilliams, a Certified Court Reporter within & for the State of Missouri, do certify that pursuant to Notice there came before me via Zoom videoconference, each party at their respective locations, JILLYN SCHMIDT, of lawful age, who was by me first duly sworn to testify the whole truth of her knowledge touching the matters in controversy herein; thereafter, the witness was examined and said examination was reduced to shorthand by me on the day and in that behalf first aforesaid, and later transcribed into typewriting, that the signature of the witness was waived by agreement of counsel for the respective parties hereto and with the consent of the witness; and said deposition is now herewith returned to and filed with this court.

IN WITNESS WHEREOF, I have hereunto set my hand this 19th day of October, A.D., 2023.

_____/s/ Kelly L. Guilliams, CCR #792___

Certified Court Reporter within and for the State of Missouri

